## Flint *vs.* Spurr and others.

### APPEAL FROM FAYETTE CIRCUIT.

Case 6.

PET. EQ.

1. The county in which a will is recorded, and the personal representative qualifies, is the proper county in which to bring a suit for the sale of land and distribution of the proceeds directed by will. (*Code of Practice, sections* 96 *and* 97.)

2. Where parties claiming an interest are numerous, and suit is brought for their benefit, with others who are active in its prosecution, their assent to its prosecution will be presumed, unless they show their disapprobation.

3. The pendency of one suit to restrain the commission of waste, brought by those claiming a residuary contingent interest, during the pendency of a suit about the land, cannot be relied on as a bar, or to abate a suit brought in a proper county to settle the rights of the parties to the land when that right has accrued.

4. A testator directed upon a certain contingency that a tract of land "be sold by his executors, and the money arising therefrom be applied by my executors, from time to time, to the advancement and support or education of my nephews and nieces, or their descendants, whose merit and indigence may, in the opinion of my said executors, entitle them to assistance, my said executors always keeping in remembrance that the aid to be afforded by this land is not intended for those whose indigence and want have been caused by their immorality or vice, but for the advancement of those whose merit and good deportment or genius does, in their opinion, deserve assistance. In the application, therefore, of this fund, I rely on the discernment and discretion of my executors, with this

restriction, viz: that the concurrence of at least two of them shall be necessary to any part of its application." Before the period for distribution all the executors died, and on bill filed by the descendants of the nephews and nieces for a sale and distribution amongst them all—held that the chancellor had no power to select any part of the descendants of the nephews and nieces on the ground that they were indigent, and give to such person, or persons, the benefit of the provisions of the will made for the indigent, &c., but that a sale of the lands and a distribution of the proceeds amongst all the descendants of the nephews and nieces, as a class, was proper; that the chancellor could not exercise the discretionary power conferred on the executors for the benefit of the indigent beneficiaries, to the exclusion of others who might have been the objects of the assistance provided for in the devise.

[The facts of the case are stated in the opinion of the court.—Rep.]

*George Robertson* for appellant—

The appellant complains of the decree of the circuit court, on the following grounds:

1. The circuit court had not jurisdiction. The will shows that the land lies in Clarke county. The suit is *in rem*. The jurisdiction, therefore, is local to Clarke county, where the first suit was brought. When a court has no jurisdiction over the subject matter, consent cannot give it, and of course could not be regarded a a waiver of the. objection. It is only when the objection is personal that it can be waived. There is no waiver here. There was a demurrer for apparent want of jurisdiction; and even this was unnecessary, as the court had no jurisdiction over the subject matter; nor when, as in this case, the petition and exhibits showed the want of jurisdiction, was it necessary to plead to the jurisdiction. The court was bound to take notice of it judicially, and dismiss the bill. The common law principle is not changed by the 123d section of the Code of Practice, title, pleading. The court erred, therefore, in not dismissing the petition.

2. The provisions of the Code for allowing a portion of a multitude of claimants to sue for themselves

and all others interested with them, only echoes the common law principle of equity, and that principle does not allow the prosecution of a suit for persons not made parties without their assent, express or implied. Ought not the petition to show the concurrence of those that.are made parties? And when, as in this case, the concurrence is denied, and the answer requires some evidence of their concurrence or assent, should the court, without any such evidence, decree in their behalf, and invite them to come in and participate in the spoliation of a poor widow —as the appellant is—and her poor orphan children? Such a practice would be licentious and unjust beyond any judicial precedent. They might never have sued of their own free will, and prosecuted it for their own benefit.

3. The devise in the will of David Robinson, on which this proceeding is founded, was not a mere power to be executed or not. in the discretion of the donees, but it was a trust, which the testator made it their duty to execute, and the execution of which a court of equity might have coerced, and may even yet fulfil itself. (*2d volume Spence's Equity, page* 81, *and the cases there cited*.) At page 85, the authors say, "though the court never exercises *a mere disc:etionary power*, yet the court has considered itself justified in exercising the discretion in some cases where a guide has been afforded by the donor. This is done in cases of maintainance and advancement. (1 *Vez.*, 60; 15 *Ib.*, 528.) Indeed, it has been said generally, that where the discretion is to be exercised on matter of *fact*, the court will refer it to the master. (*Walker vs. Walker*, 5 *Mad.*, 526; *Lewis vs. Lewis*, 1 *Cox*, 102; *Gower vs. Mainwaring*, 2 *Vez.*, 87; *Warburton vs. Warburton*, 2 *Vern.*, 420.")

In *Brown vs. Higgs*, 8 *Vez.*, 574, Lord Eldon said : "If the power be one which it is the duty of the party to execute—made his duty by the requisitions of the will—put upon him as such by the testator, he is a trustee for the exercise of the power, and not

FLINT
vs.
SPURR, &c.

as having a discretion whether he will exercise it or not; and the court adopts the principle as to trusts, and will not permit his negligence, accident, or other circumstance to disappoint the interest of those for whose benefit he is called upon to execute it."

In *Attorney General vs. Lady Downing*, *Wilson* 23, Chief Justice Wilmot said: "As to the objection that the powers are personal to the trustees, and by their death become inexecutable, they are not powers but trusts, and there is a very essential difference between them. Powers are never imperative; they leave the act to be done at the will of the party to whom they are given. Trusts are always imperative, and are obligatory on the conscience of the party entrusted. This court supplies the defective execution of powers, but never the non-execution of them; for they are meant to be optional; but a person who creates a trust means that it should at all events be executed. The individuals named as trustees are only the nominal instruments to execute that intention, and if they fail, although by death or disability, or by refusing to act, the constitution has provided a trustee. There is some *personality* in every choice of trustees, but this personality is *res unius etates*, and if the trust cannot be executed through the medium which was in the primary view of the testator, it must be executed through the medium which the constitution has substituted in its place." See, also, *Parson vs. Garnet*, 2 *Bro., C. C.*, 46; *Levin on Trusts*, 22d *volume Law Library*, 576, where it is said that, "the discretion of the trustee is to be governed by some rule, to be measured by a state of facts which the court can inquire into, as well as a private person; then the court can look with the eyes of a trustee, and will substitute its own judgment for that of an individual." In support of the text reference is made to many authorities, the most apposite of which, to this case, is that of *Gower vs. Mainwaring*, *supra*, in which Lord Hardwick said: "What differs it from the case mentioned is this; that here a rule

is laid down for the trust, when trustees have power to distribute, generally, according to their discretion, *without any object pointed out or rule laid down;* the court interposes not, unless in a case of charity—the court having a discretion in a charity—but here is a rule laid down." The trustees are to judge of the "necessity" and occasions of the family. The court can judge of such necessity—*that is a judgment to be made on facts* existing, so that the court can make the judgment as well as the trustees, and when informed by evidence of the necessity, can judge of what is equitable and just on this necessity; and he accordingly made distribution by the prescribed test of necessity. The principle of that case has not been doubted or overruled. The only cases which have been thought by some to conflict with this case, are cases where a provision was made for *poor* relations, arising out of an uncertainty as to the meaning to be given to the term poor relations—whether it was to be construed to mean *poverty*, or humility, &c.

The donor intended that the nieces and nephews, or descendants, should have the benefits of his bounty. He did not intend to leave it discretionary with his executors whether they should have it or not. It was imperative; the will must be carried out according to the design and purpose of the testator; it was so intended. The land was to be converted into money, and to be held as a trust fund, and the executor to apply it from time to time to any of a prescribed class whose merits "or indigence" might, in their opinion, entitle them to such assistance. The question of "merit," or talent, or genius, depending as it does on mere opinion, or sentiment, or taste, may not be judicially cognizable, and the solution of it may therefore be a matter of arbitrary personal discretion.

But "indigence" is a *fact*, extraneous and provable, and can be judicially decided, as well as any other fact; and the application of the power in this case not being conjunctive but expressly disjunctive,

that branch of it applicable to indigence cannot be affected by that portion applicable to "merit," and consequently the executor having died without executing any portion of the power, "indigence" alone can claim the benefit of the trust, and the fact that the executors were authorized to judge of the "indigence," is no more than a judicial opinion or judgment as to the existence or non-existence of any other prescribed fact, which may be adjudicated variously by a court of equity as well as private persons.

The testator's object was to help, not the profligate, but only the "indigent" of "merit" or good deportment. Altogether, the context and pervading spirit show clearly that his benevolent purpose was to provide a trust fund for the relief of any of his kindred, who might become indigent without immorality or vice, and either possessed genius, or had merit, or was of good deportment. The discretion of the executors was not to overrule the purposes of the testator, but to carry it out prudently, according to his declared purpose. This conclusion is fortified by the following considerations:

1. The power was conferred, not to trustees' *nominatim*, selected for that special purpose, but to the *office of executors*.

2. No portion of the power was to be executed until after an event which might not occur for years, and did not occur till many years after the death of the executors. These facts show that the testator did not intend that the execution of the power should depend altogether on the will or life of the executors, but that it should be continued as long as the fund should last.

3. Considering the object of the fund, the indefiniteness of the time during which it might be applied, and the fact that no disposition was made of it, the inference is strong, if not irresistable, that the testator intended that it should be a trust fund as long as it should be unexhausted by drafts of

charity, and as long as any designated object of that charity should be found among the descendants of any of his nephews and nieces, and of course he did not mean that the appropriation should depend either upon the arbitrary discretion or life of the executors. The devise was not to his nephews and nieces; it was not to the executors, the legal title being undevised passed to his heirs, and rests in them until the power is exercised to which it was subjected by the will, shall have been exhausted.

This is not like the cases in which the power is given to distribute among persons of a designated class, as they shall choose, or in such proportions as they shall choose. In any such case the distribution is personal, and if the power bè not executed, the only available trust is for each or all of the designated class to take in equal portions, the constructive intention of the donor being that all shall take, unless the donees, in the exercise of a delegated discretion shall make a discrimination. But when, as in this case, the only power is given to one of a class —for example to one of the donor's children, on a prescribed contingency—there is no constructive devise to any other person of that class; because it is evident that all were not intended to be benefitted by the gift. (*Sugden on Powers*, 181; *Clan. on Powers*, 88.) For the same reason, as there is no devise to the nephews and nieces in this case, but only a trust power given to any one of them, on condition of a faultless indigence, no nephew, or niece, or descendant of any one of them, can claim the trust fund, on the ground of propinquity, otherwise than as an heir, in the event of the final non-execution or failure of the power, There is no implied devise to or for the benefit of any nephews or nieces, or their descendants *as such*.

The testator did not intend to confer a mere power, but a beneficial trust, for the indigent of those named, which did not die with the donees of that trust. On this question the following authorities are

also referred to. (*Mahon vs. Savage*, 1 *Sch. & Laf.*, 111; *Green vs. Howard*, 1 *Bro. C. C.*, 33.) In the first of which Lord Reedesdale decided, and in the last Lord Thurlow said that "a power given to poor relations carried with it an enforceable trust which a court would execute in favor of any poor relation of the donor, but indigence is an ambiguous *ipsa res loquitur* and *a fortiori*. A provision for the indigent can be nothing less than a trust."

Mrs. Flint is shown to be in such situation that she has a right to claim under the provisions of the will; she stands in the prescribed relation to the testator, and is poor indeed, and that without her fault; and the petition of the claimants should be dismissed— 1. Because the court has no jurisdiction. 2. The claim is not such an one as a court of equity should enforce. 3. Because the suit should not be maintained for the benefit of persons not parties, and who are not shown to concur in its object. 4. Because the will created an available trust, neither barred by time nor lost by the death of the trustees. 5. Because the appellee is shown to be a beneficiary, and as yet the only beneficiary. 6. Because she, as such beneficiary, had a right to elect, and did elect to enjoy the land, instead of the proceeds of the sale of it, and the value of its use is not more than she had a right to claim. 7. Because a sale of the land would frustrate the charitable object of the testator. 8. Because if the will gave only a naked power to sell the land, and they died without doing so, there is no surviving trust; then even if the circuit court had jurisdiction of the subject matter, it has no authority to execute a power to sell the land, disconnected from the power and belonging to the testator's legal heirs.

4. The devise under consideration is a charity, according to the 43d Elizabeth, recognized by this court as in force here. Gifts for the benefit of the indigent or poor, or for education, are charities, which the act makes it the duty of courts to uphold and ef-

fectuate.  Lord Hardwicke said, in the case of *Gower vs. Mainwaring*, *supra*, " where a power is purely discretionary, the court cannot execute it, unless in case of a charity," and no doctrine is better settled.

If the title yet remains in the heirs of the testator, they are the proper persons to take the land and ask a sale; or if they do not desire that, they have a clear legal remedy, which they are bound to pursue.  Their objections to the decree are deemed fatal.

*Robinson & Johnson* for appellees—

Argued: 1. That Fayette county was the proper court in which to bring the suit, and that no other court had jurisdiction.  (*Code of Practice, sections* 96 *and* 97.)

The will which gave rise to the proceeding was recorded in Fayette county, and the personal representative qualified in that county.  And though one of the objects of the suit is to sell land lying in another county, yet it is not a sale "under a mortgage or other incumbrance or charge," but in pursuance of the mandate of a will, for the purpose of distribution according to the mandate of the will.  If the suit does not fall under the provisions of the sections of the Code referred to, it is only provided for by section 106, which sustains the jurisdiction.  But there is no proof in the case that the land does not lie in Fayette county.

2. There is no proof to sustain the averment of the appellant as to the disposition of the other parties in interest; but even if it were true, unless she is right on the merits, the plaintiff, and those made defendants, have a right to have the land sold and their share of the proceeds.

3. The pending suit, which is relied on, was brought solely to restrain the appellant from the commission of waste.  It was brought before the suit with Edmonson, in ejectment, was decided, and before any right had accrued to have a sale of the land.

This the record shows. Moreover, it is not shown that that suit was still pending when this suit was brought.

4. The main question is, to what extent can the provisions of D. Robinson's will in regard to the Ryefield tract of land, be carried into effect?

The will positively directs a sale of the land. This cannot be doubted. There is, in respect to this, no discretion. The remainder of the provisions of the will cannot be literally executed, as every other part of its provisions was intrusted to the discretion of not less than two of the executors, who are all dead. It is the case of an unexecuted power which the chancellor is called on to execute. It is admitted by us that, although the provisions of the will is in form a power, yet that it creates a trust in favor of a class, out of which the executors were required to select the recipients of its benefits. To this extent the circuit court went in its decree, and in which it is sustained by the authorities. But it is contended the court should have gone a step farther, and executed the discretionary power conferred on the executors. For this proposition no authority is produced; but it is contended that the principle upon which the court is to execute the power depends on *facts*, and not on *judgment* or discretion, and that the court could ascertain and decide upon the facts as well as the executors. To maintain this proposition, it was necessary to contend that indigence, not produced by vice, was the simple fact upon which the executors were to give this fund—that the most indigent and needy of the descendants of the nephews and nieces were entitled to the fund. This construction cannot be maintained without expunging or disregarding the clear, unambiguous language of the will. Indigence is not the sole criterion. Merit accompanied, or unaccompanied, with indigence, is placed on an equal footing with indigence. Genius, with or without indigence, comes in and may share the fund. It is impossible to read the provisions, and doubt the

intention of the testator to place merit and genius upon an equal footing with indigence in competition for the benefit of the fund, or doubt that the executors, in the exercise of their power, could have aided in the education of a boy of promising talents, or rewarded merit of any other kind. It was clearly, then, a matter of judgment and discretion on the part of the executors in executing this power, to consider all the claims of merit, or indigence, or genius, and, according to their judgment, distribute among them. If this view be correct, it is conceded the court cannot assume and exercise these discretionary powers of the executors. The will expressly refers the exercise of the power to *the judgment and discretion* of the executors, and imperatively requires that two should concur to make an appropriation. (See *Harding vs. Glynn*, 2d vol., 2d part of *Leading Cases in Equity, pa.* 335 *to* 355, *with the notes.*) The case of *Brown vs. Higgs*, argued before Lord Elden, reported in 1 *Vez.* 708, and 5 *Ib.* 495, seems to be most in point.

We contend that the appellant cannot, during the lifetime of his mother, come in as one in whose behalf the power could be exercised. *Descendant* is a technical legal term. There is no descendant of a person during his or her lifetime. This is illustrated by the statute of descents. An estate is, by that statute, decided to descend to a class of persons, such as children and their descendants. The term is not synonymous with *progeny* or *issue*, but means progeny or issue living at the death of their ancestor. Nothing descends until death, as in the case of a descent under a will, the progeny of one of the children of the deceased do not take any part of the estate if the parent is alive, although the statute says the estate shall descend to the children of the descendants. So here the descendants of the nephews and nieces could take nothing in the lifetime of the parent of such descendant.

To obviate this difficulty, a transfer from Mrs. Carter is relied upon to her daughter, Mrs. Flint, the ap-

pellant, of all her interest in this property. But Mrs. Carter is not pretended to be poor, or of extra merit or genius. Under this transfer Mrs. Flint could only claim the right of Mrs. Carter—her own condition is a matter of no consequence. It would be different if her mother were dead, but as she still lives, and is wealthy, it might be that at her death Mrs. Flint might be wealthy.

Some reliance is placed upon the fact that Mrs. Flint is a widow; and she has determined that she has right to this land, taken possession, and is wasting the timber. In this she may display genius, but not good conduct. Among the great number of the descendants of the testator, it would be strange if there were not several as poor as Mrs. Flint, without a rich mother to sustain them. If the court undertakes the investigation of such facts it may be an endless work, as well as the causes which lead to such conditions of poverty. Strange issues would arise, and strange testimony. And if Mrs. Flint is permitted to enjoy the land until all these questions are settled, she may at least have a life estate in the land.

December 15.      Judge DUVALL delivered the opinion of the court:

David Robinson died, in Fayette county, in the year 1806, having made a will, which was proved, and admitted to record by the Fayette county court. All the provisions of the will have been long since fully executed, except that which forms the basis of this action. The provision is in these words:

"The residue of my said tract, called the Rye-Field, after the title to the same shall be completely adjusted, and the present law suit ended, I direct shall be sold by my executors, and the money arising therefrom be applied by my executors, from time to time, to the advancement, support or education of any of my nephews or nieces, or their descendants, whose merit or indigence may, in the opinion of my said executors, entitle them to assistance; my said executors always keeping in remembrance that the

aid to be afforded by this land is not intended for those whose indigence and want have been caused by their immorality or vice, but for the advancement of those whose merit, good deportment, or genius, does, in their opinion, deserve assistance. In the application, therefore, of this fund, I rely on the discernment and discretion of my executors, with this restriction, viz: that the concurrence of at least two of them shall be necessary to any part of its application."

The testator having previously conveyed a tract of land to his nephew, John Edmonson, he directed in the next clause of his will, that as Edmonson's title was disputed in a suit then pending between him and an adverse claimant, if that suit should result in the loss of any portion of his land, he should be indemnified out of the tract described in the clause just quoted; and until that litigation should be terminated, no sale was allowed to be made by the executors. The suit against Edmonson lasted until a few years before the commencement of this action; and, in the meantime, all the executors had died, and the nephews and nieces of the testator, with one exception, had also died; all the latter, except two, having left descendants. Some of those descendants had also died, leaving children and grand-children.

The tract of land in controversy remaining thus undisposed of and unoccupied, the appellant, Mrs. Margaret Flint, the daughter of a grandniece of the testator, entered upon and took possession of it about the year 1846; built a house and cleared a portion of the tract, and has occupied it ever since, claiming the right to do so under the provisions of the will, as the most indigent and meritorious of the descendants of the testator's nieces or nephews.

The appellees, who are great grandnephews and nieces of the testator, and descendants of one of his nieces, and who sue on behalf of themselves and of other descendants of the nieces and nephews, instituted this action against Mrs. Flint, the administra-

tor *de bonis non* of Robinson and others, seeking to have that clause of the will carried into effect, as far as is practicable under the circumstances, by a sale of the land and a distribution of the proceeds among either the descendants of the nephews and nieces, or among the heirs at law of the testator.

Mrs. Flint, in her answer, resisted the right of the appellees to the relief sought, or to any relief upon the several grounds hereafter stated.

The circuit court rendered judgment, directing a sale of the land and a division of the proceeds, into as many shares as there were, at the death of the testator, nephews and nieces who are now alive, or having died have left surviving descendants ; and that to each surviving niece or nephew, or their assigns, shall be paid one share, and a share shall be distributed among the descendants of each deceased niece or nephew *per stirpes*—the number and names of such nephews and nieces, and their descendants, to be ascertained by the commissioners, to be from time to time reported, &c.

From this judgment Mrs. Flint has appealed, and seeks a reversal upon the same grounds relied upon by her in the circuit court, which are :

1. That the court had no jurisdiction.

2. That those of the descendants not made parties, but in whose behalf the suit is brought, do not approve of, or wish to unite in it.

3. That when this action was commenced, there was another suit pending for the same purpose.

4. That the judgment is erroneous upon the merits.

We will proceed to dispose of the questions arising upon each of these objections, in the order in which they are stated.

1. By the Civil Code, (sections 96, 97,) it is provided " that an action to settle the estate of a deceased person must be brought in the county in which his personal representative qualified," and " that an action for the distribution of the estate of a deceas-

1. The county
in which a will
is recorded, and
the personal
representative
qualifies, is the

ed person, or for its partition among his heirs, or for the sale of real property or slaves descended from him, must be brought in the county in which his personal representative was qualified." This case, it seems to us, comes clearly within these provisions of the Code. An action for the mere *partition* of real estate, or for the sale of real property under a mortgage, lien, or other incumbrance, must be brought in the county in which the subject of the action, or some part of it lies; but this suit is for neither the one nor the other of these purposes. Its object is a sale of land, it is true, but it is a sale directed by a will, for the purpose of distribution among those entitled to the proceeds. The will was recorded in Fayette county; there the personal representative was qualified, and there the suit was brought—properly, as we think.

2. It is not shown that any of the parties in whose behalf the action is brought disapprove of it. The presumption is that they concur in its objects; but even if the contrary were shown, it would be no ground for dismissing the suit, inasmuch as the plaintiffs would certainly have a right to prosecute it for themselves.

3. The suit, the pendency of which is relied upon in bar of this action, was brought to restrain the appellant from the commission of waste by cutting and carrying off the timber from the land in contest. The action of ejectment against Edmonson was then undecided, and of course no sale of the land, or application of the proceeds, under the provisions of the will, could have been then decreed or made, nor do we understand from the record that such was any part of the relief then sought by the plaintiff in that suit.

4. The next and most important question is whether the provision of the will in question is to be construed as creating a trust in favor of the class out of which the executors were required to select the proper recipients of the testator's bounty, or whether it is

VOL. XVII.       33

FLINT
*vs.*
SPURR, &c.

proper county in which to bring a suit for the sale of land and distribution of the proceeds, directed by will.— (*Code Practice, sec.* 96 *and* 97.)

2. Where parties claiming an interest are numerous, and a suit is brought for their benefit with others who are active in its prosecution, their assent to its prosecution will be presumed, unless they show their disapprobation.

3. The pendency of one suit to restrain the commission of waste, brought by those claiming a residuary or contingent interest during the pendency of a suit about the land, cannot be relied on as a bar, or to abate a suit brought in a proper county to settle the rights of the parties to the lands when that right has accrued.

FLINT
vs.
SPURR, &c.

such a trust as could have been specifically executed by the court, and which should have been so executed in favor of the appellant, upon the state of fact presented by her as the basis of her title and claim to the whole of the land so devised?

A discretionary power is said to exist wherever an authority is given to trustees, which it is either not compulsory upon them to exercise at all, or if compulsory, the time or manner or extent of its execution is left to be determined by the trustees. (*Hill on Trustees*, 485.) The authority conferred on the executors of this will is discretionary only as to the *manner* of its execution in the selection of the individuals or classes to be benefitted. In all other respects it is imperative. They are directed to sell the land, after the determination of the law suit referred to, and to apply the proceeds in the manner designated. Having been prevented, by the causes stated, from the exercise of those powers, and all of them having since died, it is now insisted by the appellant that it is the duty of the court to assume the direction which had been confided to the trustees, and to exercise the powers conferred upon them by the will, in the same manner, and to the same extent that they were required to do, with this difference only, that the court can consider and adjudicate upon the claims of the *indigent* alone.

It is argued that "indigence" is a fact which may be proved and judicially decided, like any other fact; that *merits* or *talents* or *genius* are matters depending on *judgment* or *opinion* merely, and are not therefore judicially cognizable, but to be referred exclusively to the personal discretion of the trustees, who having died before being able to exercise any portion of this discretionary power, "indigence" alone can claim the benefit of the trust.

The case of *Gower vs. Mainwaring*, 2 *Vez.*, 87, is confidently relied upon as showing the distinction which was taken by the English courts between a discretion given to a trustee, to be exercised on a

FLINT
*vs.*
SPURR, &c.

matter of opinion and judgment, and one to be exercised on a matter of fact. There three trustees were directed, by deed, to give the residue of the grantor's estate "among his friends and relations, where they should see most necessity, and they should think most equitable and just." The trustees failed to act, and the question being whether the court would take upon itself this discretion, Lord Hardwicke is reported to have said, "the trustees are to judge on the necessity and occasions of the family; the court cannot judge of such necessity of the family; that is a judgment to be made on facts existing, so that the court can make the judgment as well as the trustees; and when informed, by evidence, of the necessity, can judge what is equitable and just on this necessity." And he ultimately decided that the residue was to be divided between the brother of the plaintiff and a son of a deceased sister, "according to their necessities and circumstances, which the master was to enquire into, and consider how it might be most equitably divided."

Hill, in his Treatise on Trustees, remarks, in commenting upon this case, that "Lord Hardwicke's words, as quoted above, are somewhat unintelligible, if not inconsistent with themselves; and on several other occasions, and indeed in the course of his judgment in *Gower vs. Mainwaring* itself, he expressly disclaimed any jurisdiction of exercising discretionary powers in general. And the current of more recent authorities renders it very doubtful whether the case in question would meet with a similar decision at the present day; at all events it will be found extremely difficult to make any practical application of this distinction between matters of fact and those of mere judgment and opinion." [In the report of the case of *Gower vs. Mainwaring*, to which Hill refers in the passage cited, there is probably a misprint as to words "*cannot* judge." See *Lewin on Trusts and Trustees*, 24th vol. Law Library, top page 29?, note y.]

The same author says further upon this subject,

FLINT
*vs.*
SPURR, &c.

that the courts have long since repudiated this jurisdiction in cases of discretionary powers vested in trustees, and that it is now settled that the court will never exercise a mere discretionary power, either in the lifetime of the trustees or upon their death or refusal to act. Although, where a *trust* is created for a certain class of objects, and the discretionary power applies only to the selection from or distribution amongst those objects, the court, while it disclaims the exercise of the discretion reposed in the trustees, ᣟwill, if necessary, enforce the performance of the *trust* by decreeing the distribution of the property amongst all the objects equally. (*Hill on Trustees,* 486, *and cases there cited.*)

We have found no case in which the doctrine thus lucidly stated, has been overruled or questioned, and the propriety of its application to the case we are considering is manifest. The testator directs the executors to apply the fund, "from time to time, to the advancement, support, or education of *any* of my nephews or nieces, or their descendants, whose *merit* or *indigence* may, in the *opinion* of my said executors, entitle them to assistance." That the aid to be afforded is for the "advancement of those whose merit, good deportment, or genius does, *in their opinion,* deserve assistance ;" and "in the application of this fund I rely on the *discernment* and *discretion* of my executors." We are unable to conceive how the conclusion can be drawn from these clear and explicit declarations of the intention of the testator, that in any event, or upon any contingency, *indigence,* however faultless, was to be permitted to monopolize this bounty, to the utter exclusion of the claims of "merit" or "good deportment" or "genius."

It cannot be doubted that it would have been the duty of the executors, in the execution of this power, to devote the fund to the education of such as required it, or to the reward of merit of any kind, or the relief of the indigent, according to their best judgment and discretion ; and if this be so it follows

4. A testator directed upon a certain contingency that a tract of land "be sold by his executors, and the money arising therefrom be applied by my executors, "from time to time, to the advancement and support or education of my nephews and nieces, or their descendents, whose merit and indigence may, in the opinion of my said executors, entitle them to assistance, my said executors always keeping in remembrance that the aid to be afforded by this land is not intended for those whose indigence and want have been caused by their immorality or

that the same powers, if assumed by the court, must be executed upon the same principle, and within a range of discretion no more restricted as to objects. This the court cannot do, as is conceded in the able argument of the counsel for the appellant. The utter impracticability of the exercise of this jurisdiction by a court of equity, in a case like the present, even assuming that the claims of the indigent only are to be considered, is a conclusive reason why it should have been repudiated, as it has been, by the courts of England. The difficulty of determining who, among the numerous descendants of the nephews and nieces of the testator, many of whom are unknown, and many probably in distant countries, are the most indigent, and what were the causes which led to their condition, involving probably the entire history of the life of each applicant, would be such as to promise no other results than delay, expense, and injustice.

The principle laid down in *Hill on Trustees*, above referred to, has been decided in numerous other cases. In *Burrough vs. Philcox*, 5 *My. & Cr.*, 72, it was held by Lord Cottenham, "that where there appears a general intention in favor of a class, and a particular intention in favor of individuals of a class, to be selected by another person, and the particular intention fails, from that selection not being made, the court will carry into effect the general intention in favor of the class. (*Harding vs. Glyn*, 1 *Atk.*, 469; *Brown vs. Higgs*, 8 *Vez.*, 574.)

And the circuit court having proceeded upon this principle in the distribution of the fund in controversy, the judgment is in all respects proper, and must therefore be affirmed.

vice, but for the advancement of those whose merit and good deportment or genius does, in their opinion, deserve assistance. In the application, thereof, of this fund I rely on the discernment and discretion of my executors, with this restriction, viz: that the concurrence of at least two of them shall be necessary to any part of its application." Before the period for distribution all the executors died, & on bill filed by the descendants of the nephews and nieces for a sale and distribution amongst them all—held that the chancellor had no power to select any part of the descendants of the nephews & nieces on the ground that they were indigent, and give to such person, or persons the benefit of the provision of the will made for the indigent, &c, but that a sale of the lands

---

and a distribution of the proceeds amongst all the descendants of the nephews and nieces, as a class, was proper; that the chancellor could not exercise the discretionary power conferred on the executors for the benefit of the indigent of the beneficiaries, to the exclusion of others who might have been the objects of the assistance povided for in the devise.