## Chambers, et al. v. Slone, et al.

(Decided February 11, 1915.)

### Appeal from Pike Circuit Court.

Landlord and Tenant—Breach of Contract by Tenant—Action by Tenant to Recover Money Paid—Counterclaim.—Where a tenant made a bank deposit of $270 to secure payment of six months' rent and abandoned the premises at the beginning of his term, and the landlord again took possession in 15 days, in a suit by the tenant to recover the money, and a counter claim by the landlord for damages in the breach of contract and injury to property, the evidence examined and held that the court did substantial justice in allowing $100.00 to the landlord and remainder of fund to the tenant.

J. S. CLINE for appellants.

J. F. BUTLER, J. J. MOORE and F. W. STOWERS for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming

On April 13, 1911, the appellants, Hugh Chambers and Mary Chambers, husband and wife, and J. C. Chambers, their son, about 19 years old, who resided with them, owned a hotel known as the Yukon in the town of Ft. Gay, West Virginia. To be more accurate, J. C. Chambers, the infant, had the legal title to the real estate, and Hugh Chambers and wife owned the furniture and furnishings of the hotel.

Ft. Gay is a town of from 150 to 200 people situated just across the Big Sandy from Louisa. On the date named, the Chambers by written contract rented the premises to the appellee, John Slone, for a term of one year at the rate of $45 per month. The contract gave Slone an option to retain possession after his year, upon further conditions to be then complied with, and a privilege of buying the property if the infant, J.

C. Chambers, would ratify the contract and make a deed at maturity. Slone's option to purchase, and that part of the contract giving him the privilege, are not material to the issue, except in so far as they show that Slone knew at the time he was dealing with an infant.

The binding part of the contract was for the one year rental period. When the contract was executed, Slone paid $270 advance rent for the first six months. He also deposited with the First National Bank of Louisa $270 to the credit of Mary A. Chambers. This deposit was the amount of rent for the last six months, and it was deposited in the bank in conjunction with the contract we have referred to with the understanding that the bank would pay it to Mrs. Chambers at the rate of $45 per month, after the first six months expired. In the event the property was destroyed by fire during the last six months, rent payments should cease, and the amount then remaining in the hands of the bank should be repaid to Slone.

The rent contract also stipulated that Slone would surrender possession of the premises, furniture, etc., at the expiration of his term in good condition, and that he would conduct the hotel in an orderly way, "and use all efforts to prevent any unbecoming conduct during his occupancy." At or about the expiration of the six months, Slone abandoned the hotel. The Chambers were living in Pike county, this State, and in their absence he had an inventory of the property made and checked over by a person whose repute is not questioned. It is not contended that any of the articles, or at least, none of consequence, are missing. In about ten or fifteen days, the Chambers repossessed themselves of the property through another tenant, and in about a month the Chambers took possession in person.

Slone brought this suit against the Chambers and the bank to recover the $270 which he had deposited to pay the last six months' rent. He alleged that the Chambers falsely represented to him that the hotel had a large patronage and was doing a paying business; that they concealed from him the fact that the infant had title to the hotel; and that he had been harassed in his possession of the household goods by part of them being levied upon. He asks that the bank be enjoined from paying over to Mary and Hugh Chambers the $270 for the reason that they are insolvent.

The Chambers by answer denied any fraud or misrepresentation, or any disturbance of his right to hold or possess the hotel and the household goods. By counterclaim they ask a judgment for $1,000 against Slone for breach of contract and for injury he had done to the good name of the hotel, by making it a resort of drunkards, gamblers, and licentiates. Issue was joined on all of the propositions, and the court heard the proof. It was adjudged that the bank pay the Chambers $100 on their counter-claim. The balance, $170, was adjudged to belong to Slone. Chambers and the bank appeal. We have examined the record carefully, and believe the judgment of the court did substantial justice to the parties.

Slone does not satisfactorily show that any fraud was practiced upon him. He was at the hotel for two or three days before he entered into the contract. At that time, all the table room was taken by boarders during all meal hours, and the house was so crowded that the family had to sleep in the parlor. Maybe these were star boarders, but Slone has not offered any evidence to prove it, or to indicate that these conditions were anything out of the ordinary.

The patronage fell off very soon after Slone took possession. The Chambers say that when they resumed the business there was none. They introduce a number of witnesses who testify to the frequent presence about the hotel during Slone's tenancy of various persons of questionable character. There is evidence tending to show that Slone approved the presence of some of them and that his manner of conducting the place damaged its reputation. There was also damage to some of the furniture and bed clothes.

Slone testifies that an officer had an execution for $30 against Chambers, and levied it on some of the furniture, but it was never sold nor taken out of his possession. Young Chambers never manifested any disposition to repudiate the contract, and at all times Slone had full possession of all the property. It is apparent that Slone gave up the place because he was losing money, and in doing so, he breached his contract. The Chambers repossessed themselves immediately and have been in possession ever since. Recognizing that the lower court could better judge of the credibility of the witnesses, and the amount of damage sustained by the Chambers, we are disposed to accept his judgment, and to say that the award of $100 to the Chambers amply compensate them.

The bank complains of the judgment and says that on the day Slone deposited the money to the credit of Mrs. Chambers, it loaned that much or more money to the Chambers, and took the Slone paper as collateral. Under the circumstances, the bank acquired no greater right to this fund than Chambers had.

The judgment is therefore affirmed.