**FRANCIS COMPANY, Appellant,**

v.

**LINCOLN FEDERAL BUILDING AND LOAN ASSOCIATION, Appellee.**

Court of Appeals of Kentucky.

June 13, 1969.

As Modified on Denial of Rehearing
Oct. 10, 1969.

————◆————

Allen R. Brown, Louisville, for appellant.

Robert J. Speckman, Louisville, for appellee.

EDWARD P. HILL, Judge.

At a judicial sale of an office building located at Fourth and Chestnut, Louisville, Kentucky, appellee Lincoln Federal Building and Loan Association (hereinafter Lincoln) became the successful bidder. The sale was made pursuant to judgment in a foreclosure suit by certain mortgagees against appellant Francis Company (hereinafter Francis).

Subsequent to the sale, Lincoln purchased from Francis personal property that did not pass with the building for an agreed amount of $11,858.87, on which Lincoln paid $4,358.87, leaving a balance of $7,500.

Some days after the sale, Lincoln discovered that Francis had received from Roni Corporation, one of its tenants, $7,500 as a security deposit under Francis' lease to Roni. Lincoln demanded it be given credit by Francis for the amount of this deposit. Francis declined to allow the credit and instituted this suit to collect the balance of the sale price for the personalty sold to Lincoln. The trial court allowed Lincoln a set-off of $7,500 against Francis, from which Francis has appealed. The question on this appeal is whether or not Francis should account to Lincoln, by way of credit on Lincoln's debt to Francis, the amount of this deposit.

The judgment directing a sale of the property provided that all "rights of all tenants in possession on September 29, 1965," would be recognized and protected and that the purchaser take the property subject to all leases. So that questions emerge: What obligations did Lincoln assume under Roni's lease? Was Lincoln entitled to any benefits or rents under the lease other than the rentals accruing after the date of confirmation of the sale?

The answer to these questions hinges upon the interpretation of the Roni lease, the salient part of which we quote herewith:

"4.1 On or before May 1, 1962, Lessee shall pay to and deposit with Lessor Seventy-five Hundred Dollars ($7500.-00), which amount, if not previously applied as herein elsewhere permitted, shall be considered to be in payment of, and shall be credited upon, the rental for the last three (3) calendar months of the term.

"4.2 If, as a single unified project, the tenant shall make a major structural installation or major structural improvement in the theatre premises costing in excess of Twenty-five Thousand Dollars ($25,000.00), said Seventy-five Hundred Dollars ($7500.00) deposit shall be applied upon the rental for the three (3) calendar months next following the completion of the project.

"4.3 While Lessor is in possession of said Seventy-five Hundred Dollars ($7500.00) and prior to its application, Lessor need not pay Lessee any interest thereon and may hold, invest and use said sum as Lessor may determine."

As clearly appears from the lease, Roni paid to and deposited with Francis $7,500 to be applied on the last three months of the term (1972), unless earlier applied under paragraph 4.2 of the lease relating to

"a major structural installation or major structural improvement."

At the time of the sale, Francis was holding this deposit somewhat in the nature of a trustee relationship, without any duty to pay "interest" thereon and could "hold, invest and use" the same. The rental period the deposit was made to cover would come along after the purchase by Lincoln.

Among the obligations Lincoln assumed in connection with Roni's lease was the primary one to keep the premises available to Roni. The record is silent as to the termination of the lease by fire or casualty or the property's acquisition for a public purpose. At common law, the loss or destruction of the leased premises did not release the tenant of the obligation to continue paying rentals. Nixon v. Gammon, 191 Ky. 175, 229 S.W. 75. However, this unfair and unjust common law rule has been wisely abrogated by KRS 383.170, which states:

> " * * * A tenant, unless he otherwise contracts, shall not be liable for the rent for the remainder of his term of any building leased by him, and destroyed during the term by fire or other casualty without his fault or neglect."

Of course nothing has occurred to terminate Roni's lease, but there are possibilities that the premises may be destroyed by one of the causes mentioned above, in which event Roni not being liable under the statute for rents after the termination of its lease would be entitled to a return of its deposit.

In such eventuality, Roni would look to its landlord, hereafter Lincoln, for a return of its deposit, Francis no longer being the landlord but occupying a much lower rank as a bankrupt.

If Lincoln is bound to assume the obligations of Roni's lease, it should be entitled to the benefits thereof. It cannot be compelled to accept the "bitter" part of the lease and be denied the "sweet." It is only

fair and equitable for Francis to turn over to Lincoln the deposit in question. 51 C. J.S. Landlord & Tenant § 258(2) a. states:

> "Ordinarily, the purchaser of property takes subject to a lease thereof where he has actual or constructive notice of it, even though it is unrecorded, and the rights and liabilities existing between the grantee and the lessee are the same as those existing between the grantor and the lessee."

Tiffany on Landlord and Tenant, § 149(b), at page 881 says that:

> "As regards the rights and liabilities arising from privity of contract, that is, from the covenants of the lease, the transferee of the reversion is in approximately the same position as the original lessor, so far as they are of such a character as to 'run with the land.' This is usually in terms based on the statute of 32 Hen. 8, c. 34, or of state statutes more or less similar thereto.
>
> * * * * * *
>
> "In Illinois the statute provides that the grantees of any demised lands or of the reversion thereof, the assignees of 'the lessor of any demise,' and the heirs, and personal representatives of the lessor, grantee, or assignee, shall have the same remedies as their grantor or lessor might have had, * * *. *These provisions are sufficient to transfer the benefit of covenants to the transferee of the lessor or of the lessee,* and perhaps to impose the burden thereof on the transferee * * *. In the states in which there is no local enactment on the subject, presumably the English law upon the subject is ordinarily to be regarded as in force." (Our emphasis.)

In Chambers v. Slone, 162 Ky. 680, 173 S.W.2d 129, this court affirmed a judgment allowing Slone, a tenant, to recover advanced rentals after vacating Chambers' property.

From what we have said, we are not convinced of appellant's theory that the

rule of caveat emptor should apply. We do not think the principles of law announced in Columbia Life Insurance Co. v. Smith, 271 Ky. 133, 111 S.W.2d 618; Fox v. McGoodwin's Admr., 56 Ky. 515, 21 Ky. Law Rep. 1776, 56 S.W. 515, and Natick Five Cents Sav. Bank v. Bailey, 307 Mass. 500, 30 N.E.2d 383 (1940), are applicable to the facts of the present case.

We do not intend to convey the impression that a landlord may not collect and keep future rentals undisturbed by subsequent divesting of title, either voluntary or involuntary. But under the peculiar facts of the present case, we are constrained to the belief that it is inequitable to permit Francis to keep the deposit in question.

The judgment is affirmed.

REED, OSBORNE, and PALMORE, JJ., concur.

MONTGOMERY, C. J., dissents.

STEINFELD, J., not sitting.