# Hoy *versus* Holt.

1. Where in a lease there is an express and unconditional agreement to repair and keep in repair, the tenant is bound to do so, though the premises be destroyed by fire or other accident.

2. When a party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract, and therefore if a lessee covenant to repair a house, though it be burned by lightning or thrown down by enemies, yet he is bound to repair it.

June 16th 1879.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.    WOODWARD, J., absent.

Error to the Court of Common Pleas of *Centre county :* Of May Term 1879, No. 126.

Covenant by John Hoy against William Holt, and others to recover damages for a breach of a covenant in an article of agreement.

In 1870 John Hoy, the plaintiff below and the plaintiff in error, was the owner of a valuable tract of timber land in Snow Shoe township, Centre county, Pa., and also of a portable steam saw-mill, which had been in use for several years, and in need of repairs. William Holt, who lived on an adjoining tract, Jesse Williams and W. M. Holmes, were manufacturers and dealers in lumber. Jesse Williams had previously leased another tract of timber land in said township of Snow Shoe, and had used Hoy's steam saw-mill in the manufacture of lumber.

On the 23d day of July 1870, Hoy entered into a written contract with said Holt, Williams and Holmes, whereby Hoy sold to said parties all the white pine, oak and hemlock timber on said tract of timber land.

The agreement contained the following covenant:—

"Said Williams, Holmes and Holt are to have the use of said Hoy's steam saw-mill (now or recently) in the possession of Jesse S. Williams, to saw said timber free of charge ; the compensation for the use of said steam saw-mill being considered and included in the price to be paid for said timber as aforesaid. Said Williams, Holmes and Holt are to put said saw-mill in good repair and good running order, and the same so keep, and when all said timber is sawed into lumber and manufactured into shingles (the engine and machinery of said saw-mill to be used for driving the shingle machines), to deliver said saw-mill to said Hoy in reasonable good condition and repair."

In pursuance of said agreement, the said Holt, Williams and Holmes entered into possession of the said tract of timber land, put the steam saw-mill in good repair and working order, and commenced the manufacture of lumber. Subsequently, said Williams and Holmes sold their interest in the contract to Holt, who continued the manufacture of lumber in said Hoy's mill until July

[Hoy *v.* Holt.]

7th 1872, when the mill was burned—the same not having been insured by said Hoy or Holt.    Holt built a new steam saw-mill on said tract, where he manufactured the residue of the merchantable timber on said tract, or the greater part of it, and removed the mill he had built.

At the time the agreement was entered into, on the 23d of July 1870, the ruling prices for merchantable white pine and oak timber in Snow Shoe township, were above $3.50 per thousand feet, board measure, but a reduction was made by said Hoy in the price of stumpage, in consideration of the necessary repairs to the mill, and its delivery to him in good repair when the said timber was manufactured.

On the 7th of August 1876, Hoy instituted an action in covenant on said agreement, against Holt, Williams and Holmes, to recover the value of said steam saw-mill, or damages for its non-delivery according to the covenant in the agreement.

In charging the jury, the court, Mayer, P. J., inter alia, said:

"In pursuance of the terms of the agreement the defendant entered into possession of the timber lands, repaired the mill, and commenced manufacturing lumber and shingles.    Before 'all of the timber upon said lands had been sawed into lumber and manufactured into shingles,' the mill took fire and was destroyed.    How the fire originated is unknown.    The plaintiff contends that under the covenant, which we have just read to the jury, the defendant is liable to the plaintiff for the burning of said mill, and is either bound to rebuild and replace said mill, as it was before the fire, or respond in damages to the plaintiff to the extent of the loss sustained by the destruction of said mill. ·

"As we interpret and construe said covenant, looking at the entire scope and purport of it, we are of the opinion, and so instruct the jury, that the defendant is not liable for the burning of said mill, unless the evidence in the case satisfies the jury that the burning was caused by the negligence of the defendant, or that of his agents or employees."

The verdict was for defendants, when the plaintiff took this writ and alleged that the court erred in charging as above.

*Adam Hoy* and *A. O. Furst*, for plaintiff in error.—Where there is an express and unconditional agreement to repair and keep in repair, the tenant is bound so to do, though the premises be destroyed by fire or other accident: Chit. Con. 336; Add. Con. 374; Paradine *v.* Jane, Aleyn 27; Brecknock Company *v.* Pritchard, 6 Term R. 750; Bullock *v.* Dommitt, 6 Id. 650; Walton *v.* Waterhouse, 2 Saund. 422; Leeds *v.* Cheetham, 1 Simon 146; Digby *v.* Atkinson, 4 Camp. 275; Phillips *v.* Stevens, 16 Mass. 238; Linn *v.* Ross, 10 Ohio 412.    The case of· Pollard *v.* Shaffer, 1 Dall. 230, decides that destruction of the premises by a public

[Hoy *v.* Holt.]

enemy will excuse a tenant from his contract to deliver up the premises in good repair; but it does not decide that destruction by an accidental fire will excuse.

*Alexander & Bower* and *Beaver & Gephart*, for defendants in error.—There was no lease of any land or tenement, and, therefore, the saw-mill, which was only a personal chattel and not attached to the soil, was not the subject of lease; it was a thing that could be hired or bailed. So far then as the mill was concerned we contend that it was a personal chattel, and that the contract between the parties placed them in the relative position to each other of bailor and bailee. It was a contract of sale as to the timber, and a contract of bailment as to the saw-mill.

The tenant is not bound to rebuild a house burned accidentally: Pollard *v.* Shaffer, *supra*.

Mr. Justice PAXSON delivered the opinion of the court, June 23d 1879.

The mill in controversy having been destroyed by fire during the defendants' occupancy of it, and before they had completed the cutting and manufacturing of the timber purchased of the plaintiff, the defendants allege that they are under no liability to rebuild, or compensate the plaintiff for his loss, because the contract between the parties was not a lease; but that it was a sale as to the timber, and a bailment as to the mill. It is not important by what name we call the contract. It is material to know what the parties agreed to do. Briefly stated, the plaintiff sold to the defendants his timber upon a certain tract of land at a stipulated price per thousand feet, with the privilege of a portable steam saw-mill belonging to plaintiff and upon the premises, for the purpose of manufacturing said timber. The defendants covenanted "to put said saw-mill in good repair and good working order, and the same so keep; and when all said timber is sawed into lumber and manufactured into shingles, to deliver said saw-mill to said Hoy (plaintiff), in reasonable good condition and repair." Now, whether we call this a lease or a bailment, the covenant remains, and the defendants must show that they have performed it, or that they are excused from its performance by some legal reason.

It has always been considered that where, in a lease there is an express and unconditional agreement to repair and keep in repair, the tenant is bound to do so, though the premises be destroyed by fire or other accident: See Chit. Con. 336; Ad. Con. 374; Brecknock *v.* Pritchard, 6 Term R. 750; Bullock *v.* Drommitt, Id. 650; Leeds *v.* Cheetham, 1 Simon 146; Digby *v.* Atkinson, 4 Camp. 275; Phillips *v.* Stevens, 16 Mass. 238; Linn *v.* Ross, 10 Ohio 412; And it is no defence to the claim for rent that the premises had been destroyed by fire, and that the landlord had received the

insurance money: Magaw v. Lambert, 3 Barr 444; Fisher v. Milliken, 8 Id. 121; Dyer v. Wightman, 16 P. F. Smith 427; Bussman v. Ganster, 22 Id. 285. The case of Pollard v. Shaffer, 1 Dallas 210, was cited as sustaining a contrary view. But in that case it was specially pleaded by the defendant " that an alien enemy, to wit, the British army, commanded by General Sir William Howe, on the 1st of September 1777, had invaded the city of Philadelphia, had taken possession of the premises, and held the same until the end of the term, and afterwards; and that during the period they held possession, they had committed the waste and destruction," &c. In the case in hand the injury was not occasioned by the act of God or a public enemy. It was an accident, not necessarily the fault of the defendants, but one which they could have protected themselves against, either by an insurance, or by an exception in the contract. The latter is very common in this state; indeed, there are few leases here that do not contain an exception in case of fire. This is the reason, in all probability, why our books are so meager of authority upon this point.

It is conceded that the contract in controversy is not technically a lease. It is, however, one of a class quite common in the lumber regions, and known as timber leases. In such cases the timber is paid for at fixed rates, and such possession of the premises given, and for such time, as is necessary to remove it. And there is an analogy between this contract and ordinary leases of real estate so far as the liability to repair is concerned. If, however, the defendants are right in their position, that the contract was a mere bailment of the mill, their covenant is still in their way. For while it is undoubtedly the general rule in case of bailments, that if the thing hired is lost or injured by inevitable casualty, or by superior force, and without any fault of the hirer, he is exonerated from all risk: Story on Bailments, sect. 408. Yet the rule is laid down by the same eminent authority, that bailees may be responsible for accidents by special contract: Id. 29. If the defendants were bailees of the mill, they were so by special contract, with a special covenant to repair, and the cases cited of common-law bailments do not apply. The one raises a duty created by the party, the other a duty created by the law. The distinction between them is well defined by Sergeant Williams in his edition of Sir Edward Saunders's Reports (2 Saund. 69); Walton v. Waterhouse, Id. 422, note (2.) " When the law creates a duty, and the party is disabled to perform it without any default in him, and he has no remedy over, the law will excuse it, as in waste, if a house be destroyed by tempest or by enemies, the lessee is excused; so in escape, if a prison be destroyed by tempest or enemies, the gaoler is excused; but when the party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might

[Hoy *v.* Holt.]

have provided against it by his contract. And, therefore, if a lessee covenant to repair a house, though it be burnt by lightning, or thrown down by enemies, yet he is bound to repair it."

It is a reasonable interpretation of this contract that the parties contemplated the return of the mill when the contract was over, "in reasonable good condition and repair." The contract so stipulates. The defendants were to put the mill in good order and repair, and keep it so. This was doubtless with a view to enable the plaintiff to manufacture the balance of his timber after the defendants had ceased operations. Not only was this the plaintiff's understanding of the contract, but he appears to have given a consideration for it. He says, in his testimony: "I reduced the price of the timber down to $3.50 for their timber, when the Snow Shoe Company got $5 for their timber. So I made a reduction for repairs of the mill that I should get a good mill and put down the price of the timber." This testimony does not appear to have been contradicted. The plaintiff having made an abatement in the price of the timber for the very purpose of having the mill restored to him in good order, and the defendants having covenanted to restore, no sufficient reason has been shown why they should not be held to their covenant.

The judgment is reversed, and a *venire facias de novo* awarded.