## Nixon v. Gammon.

(Decided March 25, 1921.)

### Appeal from Boyd Circuit Court.

1  Landlord and Tenant—Repairs.—A covenant to make repairs does not require a landlord to rebuild a house which has been substantially destroyed by fire, and this is true even in cases where the contract requires the landlord to make extraordinary repairs.

2.  Landlord and Tenant—Repairs—Pleading.—A petition which does not aver that the building could, by extraordinary repairs, be made tenantable, does not state a cause of action.

H. R. DYSART for appellant.

E D. STEPHENSON, P. C. MALIN and PRICHARD & MALIN for appellee.

Opinion of the Court by Judge Sampson—Affirming.

Appellee Gammon leased a store room with certain appurtenances, in the city of Ashland to appellant Nixon for a period of ten years from August 1, 1917, at the monthly rental of $150.00, and a bonus of $1,000.00 "for the business location." In addition appellee purchased certain fixtures then in the building for which he agreed to pay Gammon $400.00, and the sum was added to the bonus, $1,000.00, a total of $1,400.00, and the whole paid $700.00 cash and the balance in $100.00 monthly installments beginning September 1, 1917.

The written contract between the parties is too long to copy in full but contains the following provisions:

"Witnesseth, . . . has leased, let, demised and rented unto the said lessee, his executors, administrators and assigns, for the term of ten (10) years from and after August first (1st), 1917, the following described property, to-wit. (Here follows description.) . . . It is understood and agreed between said leasor and lessee, that in consideration of this lease and of the price and terms of payment thereof, hereinafter set out, the said lessor has sold, transferred and delivered and by these presents does sell transfer and deliver unto said lessee, the following described property, and the business location of said building, known in business parlance as a "bonus."

One (1) twenty (20) foot wall case.
One (1) eight (8) foot cigar case.
One (1) national cash register.
One (1) lot of wall mirrors.

For said property the said lessee agrees and binds himself to pay the said lessor, the sum of four hundred (400) dollars, and as a bonus for the business location, the sum of one thousand ($1,000.00) dollars, a total of fourteen hundred ($1,400.00) dollars, said sum to be paid in manner and form as follows: . . . It is mutually understood and agreed between the parties hereto that as full rental for the premises covered by this lease the lessee shall pay to the lessor the sum of one hundred and fifty ($150.00) dollars per month, payable in advance on the first day of each month from and after August 1st, 1917, during the term of the lease, it being understood and agreed that if at any time the said lessee shall be in default for a period of thirty days in the pay of any installment of the rent after same has be-

come due, then at the option of the lessor by giving the lessee at the expiration of same thirty (30) days written notice of his intention so to do provided, however this section shall be null and void if such default be caused by wanton or willful acts of the lessor, or by the destruction of the said premises by fire or act of God or the elements.

It is further mutually understood and agreed between the parties hereto that at the option of the lessee this lease shall terminate if said premises at any time shall be destroyed or rendered untenable by fire, act of God, the elements or otherwise.

The said lessee shall have the right under this lease to have made to the premises hereby leased such improvements and repairs as he may desire or may be necessary to put same in proper and fit condition for his business, such improvements and repairs to be made at the cost of the lessee and to be made in such manner and with such workmanship as in no wise to damage said building, it being understood and agreed that such improvements and repairs as are placed on the building by the lessee shall become the sole property of said lessor, his executors, administrators or assigns. It is further mutually understood and agreed between the parties hereto, that the lessee shall have the right to install in said building such furniture, fixtures and equipment as he may desire or as may be necessary for his business, same remaining the property of the lessee, and the lessee shall have the right to remove same or any part thereof at the termination of this lease or at any other time he may desire. The lessee shall have the right also to install a suitable electrical or other sign in front of said building and to make all necessary attachments of same and wiring for same to and through said building. . . . It is further agreed and understood that the term of this lease shall be for period of ten (10) years from the first day of August, 1917, but immediately upon signing this lease the lessee shall have the right before said date, to enter upon said premises and take possession of same for the purpose of putting same in proper and fit condition for the establishment and conduct of his business therein. The said lessee further agrees that he will keep said premises in good condition and repair and at the termination of this lease to surrender same to lessor in as good condition as they now are, ordinary

wear and tear from reasonable use thereof excepted. It being understood however that all extraordinary repairs required on said building shall be done by the lessor at his expense.

The lease contract contained many other terms which it is not necessary here to copy.

Eight months after lessee Nixon took possession of the property, and had made several improvements, among them the installation of mirrors and other decorations, but most important of all a tile floor which alone cost $500.00, the building was in part destroyed by fire so that the rented premises were untenantable. At this time the whole bonus $1,000.00 had been paid as well as all the rents, $150.00 per month, for the eight months of the ten year lease.

The lessor Gammon failed and refused to reconstruct the building so as to make the part leased to Nixon tenantable, and Nixon brought this action to recover $933.33 the alleged unearned portion of the $1,000.00 bonus; five hundred dollars for the alleged value of the tile floor put in the building by lessee, four hundred dollars damages to the fixtures of lessee, and seven thousand five hundred dollars for loss of business which lessee had built up in his restaurant in the eight months which he had occupied it.

The trial court first overruled a general demurrer to the petition, and defendant answered relying upon the contract as excusing him from liability for either of the losses averred in the petition. After reply was filed the plaintiff amended his petition, averring in substance as in the original petition, but in somewhat better form. To the petition as amended the defendant again filed a general demurrer, which was after more mature consideration by the court sustained, and plaintiff declining to plead further the action was dismissed and Nixon appeals.

As the written contract was made a part of the petition the averments of the pleading are controlled by it. Civil Code, section 120; Security Fund Co. v. Logan, 90 Ky. 364. The first paragraph in so far as necessary to an understanding of the question reads as follows:

"Plaintiff states that, in addition to the monthly rental of $150.00 per month for a period of ten years, as stated in said lease, as a further consideration he agreed to pay defendant the further sum of $1,000.00 as

a bonus for the business location; that Ashland is a growing and prosperous city, that the property in question is situated in the heart of the best business section of said city, at a point where real estate values are the highest and will, during the term of said lease, very rapidly enhance in value and in the rental value of all business property located on said block greatly increase within said period, all of which facts and circumstances were well and fully known to both plaintiff and defendant at the time of the execution of said lease, particularly by reason of the fact that defendant is in the real estate business in said city and intimately acquainted with property values, and that on account of said facts and circumstances and the resulting unusual desirability and advantage of the use of said building as a business location during said term of ten years that the said bonus of $1,000.00 was agreed to be paid in advance for the use of the business location during said term of years.

"Plaintiff further states that, pursuant to said lease, he occupied said premises for a period of about eight months, to-wit, until the — day of ———, 1918, when said building, including the part occupied by plaintiff, was damaged by a fire which originated in a part of the building managed by said Gammon, and which rendered the same untenantable so far as plaintiff was concerned but did not destroy said building; that in order to render same tenantable so far as the leasehold of plaintiff is concerned, extraordinary repairs were necessitated by said fire and that plaintiff in exercising his right of election provided in said lease, gave due written notice to defendant, under date of August, 29th, 1918, that plaintiff elected not to exercise his option to terminate said lease on account of said premises having been rendered untenantable by fire, and called upon defendant to make the extraordinary repairs necessary to render same tenantable by the plaintiff, but that the defendant has wholly failed and refused to make said repairs or any part thereof, and that plaintiff has thereby been wrongfully deprived of the use of the whole of said premises, or of any part thereof."

The lease contract does not obligate the lessor to return any part of the bonus in case lessee should surrender the lease as he had a right to do under named conditions, nor was the $1,000.00 bonus to be paid $100.00 per year for ten years. But it appears that the bonus

was given in a lump sum for the "business location," which undoubtedly means as an inducement to grant the privilege—the lease—to lessee instead of some other applicant for the premises. In other words lessee gave lessor $1,000.00 for the lease contract, and obligated himself to pay the regular rental of $150.00 per month so long as he continued to use and hold the same.

There was no covenant by the lessor against fire or to rebuild in case fire destroyed the buildings, but there is a clause in the lease which appellant insists amounts to the same thing, and that is the one reading:

"It being understood, however, that all extraordinary repairs required on said building shall be done by the lessor at his expense."

To answer this contention we must determine what is meant by the term "extraordinary repairs" used in the lease, and to do this we must have resort to other parts of that instrument. The clause is preceded by this provision:

"The said lessee further agrees that he will keep said premises in good condition and repair and at the termination of the lease, to surrender same to lessor in as good condition as they now are, ordinary wear and tear from reasonable use thereof excepted."

By this clause lessee agreed to keep up all ordinary repairs to that part of the building which he occupied, and lessor was only required to keep up extraordinary repairs. Ordinary repairs are such as result from ordinary wear and tear of the building and its decay, but extraordinary repair is something greater than this. It is such repairs as are made necessary by some unusual or unforeseen occurrence which does not destroy the building but merely renders it less suited to the use for which it was intended. The word repair does not include the word rebuild, and the courts have never so held.

If a house be destroyed by fire to restore it would not be to repair it but to rebuild it, and this is true even if the walls or some part thereof be standing in substantially the same condition in which they were before the fire. So, extraordinary repairs as used in the lease, did not include repairs made necessary by a substantial destruction of the building by fire, and as there was no specific covenant by the lessor to rebuild or repair in case of fire destroying the building he was not under

obligation to do so, and if he was not obligated to do so plaintiff Nixon had no cause of action, nor is he entitled to recover the bonus or any part thereof, paid for said lease.

At common law the tenant was bound to pay the rent, though the premises be destroyed by fire, but section 2297, Kentucky Statutes, has changed the rule and relieved the tenant from this liability. Sun Insurance Co. v. Varble, 103 Ky. 758; Scott Bros. v. Flood, Trustee, 124 Ky. 739. We have also held that in the absence of a specific agreement to the contrary the tenant takes the property as he finds it and the landlord is not required to make repairs, Michael & Bros. v. Billings Printing Co., 150 Ky. 253; King & Metzger v. Cassell, 150 Ky. 537.

As a general rule a lessor is not obliged to make repairs during the term of the lease, but this is the duty of the lessee, even without a covenant to do so. In 16 R. C. L. 1086, the rule is stated as follows:

"The tenant must make fair and tenantable repairs; such as putting fences and buildings in order, by putting up or relaying the one necessary and replacing doors and windows broken in the other during his occupation or term. As sometimes expressed, the tenant is bound to keep the building wind and weather tight. The bare relation of landlord and tenant is a sufficient consideration for an implied promise to treat the premises occupied by him in a good and proper manner, according to the custom of the country or place in which they are located, and to make the ordinary repairs thereto, not new or permanent, of course, but such as will keep them from decay and dilapidation and which reasonable care will dictate. This is, however, the extent of the tenant's obligation and if the landlord wishes to impose upon the tenant the duty of making repairs beyond these he can do so only by express covenant in his lease to that effect. The tenant is not, merely by relationship, bound to make substantial and lasting repairs such as putting on a new roof; or to rebuild premises which have become ruinous or accidentally destroyed; neither is he liable for mere wear and tear of the premises nor bound to replace any portion thereof worn out by time."

A lessor is under no general obligation to repair the premises and his covenants to do so, if any are expressly made, must not be enlarged beyond their reasonable and

fair intent, 24 Cyc. 1087. But as the tenant is under such obligation even without special covenant so to do, the rule as to him is different.

While the lease contract under consideration contains a covenant on the part of the lessor to make extraordinary repairs and this is pleaded by the plaintiff, and further that the building was only partially destroyed and that the extraordinary repairs referred to in the contract and pleading were intended to and do cover such repairs as were necessary after the fire, there is a total absence of averment that the building could be repaired, even by extraordinary efforts or expenditure, and made tenantable without rebuilding the same wholly or substantially.

In this the petition was defective, for the defendant was not required under covenant to make repairs, even extraordinary repairs, to build or reconstruct the house, if such was necessary, after the fire. He, at most, was only required to make repairs, not rebuild or reconstruct the premises after a fire had destroyed the same. While the first paragraph of the petition, from a casual reading appears at first blush to present a cause of action, it does not in fact do so when measured by the rules of good pleading, and we must hold with the trial court that the demurrer thereto was well taken.

Even if the lessor were required to rebuild or make the repairs necessitated by the fire it would not follow that the tenant in this case would be entitled to recover for the tile floor constructed in the building by the tenant as set forth in the last paragraph of the petition, because the contract expressly provides that such improvements are at the expense of the tenant and to become the property of the lessor when made and the lease terminated either by expiration or by one of the parties exercising an option given to him to end the relation. The claim for the $400.00 worth of fixtures purchased by plaintiff from defendant and which were in the building is equally, for a like reason, groundless.

Another paragraph of the petition asks judgment for $7,500.00 damages for loss of business occasioned by the failure of the defendant to repair the building, but aside from what has already been said we find no merit in this claim for it is too remote, speculative and uncertain for judicial ascertainment.

The demurrer was therefore properly sustained to the petition and the judgment is affirmed.