Prudential Insurance Company of America *v.* Goodman & Theise, Inc., Appellant.

Argued April 27, 1959.   Before BELL, MUSMANNO, JONES, COHEN, BOK and MCBRIDE, JJ.

*Abraham L. Freedman,* with him *Michael M. Dean,* and *Wolf, Block, Schorr & Solis-Cohen,* for appellant.

*C. H. Welles, 3rd,* with him *Welles & Mackie,* for appellee.

OPINION BY MR. JUSTICE BELL, July 2, 1959:

An action was brought for a declaratory judgment to construe a lease. Plaintiff, as landlord, and defendant, as tenant, executed on February 15, 1950, a lease for 25 years on premises 820 South Washington Avenue, Scranton, Pa. On August 18, 1955, the leased premises were substantially damaged by a disastrous and unprecedented flood. The tenant remained in possession of the building, which was partly usable. The cost of reconstructing the leased premises amounted to $23,458.13. The tenant acknowledges its liability to pay the rent without abatement during the period when

the premises were unusable, and the only question before the Court is who must bear the cost of reconstruction.

The lease contains unusual language. The landlord bases its claim that the tenant is required to pay the cost of repairs or reconstructing or rebuilding the premises, as the case may be, on Article XXII which provides that upon termination of the lease tenant shall surrender the premises "in good order, condition and repair except for reasonable wear and tear"; and more particularly upon Article VI which provides pertinently as follows:

"The Tenant covenants throughout the term of this lease and any renewal term, at the Tenant's sole cost and expense, to take care of the buildings and improvements now or at any time erected on the demised premises and the equipment, fixtures, motors and machinery thereof (other than the Tenant's trade fixtures, manufacturing machinery and equipment heretofore or hereafter installed by the Tenant in the demised premises howsoever the same may be affixed thereto), and the sidewalks, curbs and vaults, if any, and to keep the same in good order and condition, and shall promptly at the Tenant's own cost and expense make all *necessary repairs,** interior and exterior, structural and non-structural, ordinary as well as *extraordinary,* foreseen as well as unforeseen. When used in this Article, the term 'repairs' shall include *replacements* or renewals when necessary, and all such repairs made by the Tenant shall be equal in quality and class to the original work."

Tenant, on the other hand, contends that the parties intended the tenant to pay for repairing, restoring and rebuilding the premises only if they were damaged or

---

* Italics throughout, ours.

destroyed by fire or other *insurable* casualty. The parties agree that damage by flood was not an insurable casualty in this case. The tenant bases its contention on Article XVI, Section 1, which provides as follows:

"The Tenant further covenants and agrees that in case of damage to or destruction of any building on the demised premises or of the machinery, fixtures and equipment thereof (other than the Tenant's trade fixtures, manufacturing machinery and equipment heretofore or hereafter installed by the Tenant in the demised premises howsoever the same may be affixed thereto), by fire or other *insurable* casualty, it will promptly at its sole cost and expense repair, restore and rebuild the same as nearly as possible to the condition they were in immediately prior to such damage or destruction."

Judge HOBAN, sitting without a jury, interpreted the lease in favor of the landlord and entered judgment in favor of the plaintiff in the sum of $23,458.12. In reaching his decision, the lower Court not only analyzed the lease, but relied on *Hoy v. Holt*, 91 Pa. 88. That case decided that an express and unconditional covenant to repair imposed a liability on the tenant to rebuild the premises when they were destroyed by fire (or other accident).

On the other hand the tenant relies upon *Brinton v. School District of Shenango Township*, 81 Pa. Superior Ct. 456, in which the Court held that a covenant "to return the property in as good shape as when received" binds the tenant to restore and rebuild the building if, and only if, it was injured or destroyed by fire caused by its negligence.

These cases furnish no authority or aid, since the language of this lease is so very unusual that the case is sui generis.

The final lease was the result of negotiations and an amicable settlement of demands made by each party. The tenant relies upon *Brennan v. Shore Bros.*, 380 Pa. 283, 110 A. 2d 401, where this Court said (pages 287-288) : "As a result of conversations and negotiations, demands and counter-demands, the present lease was prepared by the lessor. . . . The lease was drawn by the lessor and therefore if its meaning is ambiguous or reasonably susceptible of two interpretations, it must be construed most strongly against the party who drew it : Barium Steel Corp. v. Wiley, 379 Pa. 38, 44, 108 A. 2d 336; Betterman v. American Stores Co., 367 Pa. 193, 203, 80 A. 2d 66. . . . the intention of the parties governs, but the difficulty is [at times] to ascertain their intention."

The difficulty with applying the first part of this principle to the present lease is that Article XVI upon which the tenant relies was changed to meet its demands and *the exact language* which it desired was inserted therein. Under these facts we must attempt to construe this ambiguous lease and determine the intention of the parties without the aid of any presumption.

We believe that Article VI, which specifically covers extraordinary repairs and replacements to building, machinery and equipment, is broad enough to impose liability upon the tenant. We believe that Article XVI is broad enough to relieve the tenant from liability for damage by flood since the parties in this Article undoubtedly intended to limit tenant's liability for repair, restoration and rebuilding to damage or destruction of the building, machinery and equipment by fire or other *insurable* casualty. Moreover, §3 of Article XVI gives the tenant the option to terminate the lease if, within two years of the expiration of the initial term of the lease, the building shall be destroyed or damaged to an extent greater than 50%. Section 3 does not limit

this option to damage or destruction by fire or insurable casualty, but includes destruction or damage no matter how caused. Furthermore, §4 of Article XVI provides: "Section 4. There shall be no abatement of rent during any period when the premises are rendered untenantable by reason of damage or destruction by fire or other casualty."

Here again the parties have drawn a distinction between a casualty and an *insurable* casualty. In §4 the tenant must pay the rent if the premises are rendered untenantable by reason of damage or destruction by fire or *any* casualty, which would of course include floods; whereas, in §1 the tenant is required to repair, restore and rebuild the premises in case it is damaged or destroyed by fire or other *insurable* casualty. In this way losses and damages arising from non-insurable casualties are equitably apportioned.

From a consideration of the entire lease we believe that the parties intended the tenant to be liable for restoring and rebuilding the demised premises only if it was injured or destroyed by fire or other insurable casualty.

Judgment reversed and here entered for defendant.