## Hampers, Appellant, v. Darling.

Argued November 14, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Samuel M. Rosenzweig,* with him *Aaron Rosenzweig,* for appellant.

*Murray S. Love,* with him *Wirtzman and Sikov,* for appellee.

OPINION BY GUNTHER, J., December 14, 1960:

This appeal is from the refusal of the court below to take off a compulsory nonsuit.

On August 7, 1956, Louis G. Hampers, appellant, entered into a lease with Bessie Darling, tenant-appellee, for a storeroom at 923 Federal Street, Pittsburgh, Pennsylvania, for a period of five years at a stated rental. This storeroom was a part of the property owned by appellant who occupied the remaining portion of the building. The lease, in addition to the usual printed clause contained therein stating that the tenant was required to maintain and keep the premises in good repair and to surrender the same in as good order as at the commencing of the term, contained a typewritten rider as follows:

"3. Lessee to maintain and keep the leased premises in good repair at all times.

"4. Lessee to pay, as additional rental for said premises, ½ of the water rents assessed by the City of Pittsburgh for the said building containing leased premises. In addition, the lessee shall at all times maintain and keep in good repair the motor and other equipment which operates a well for the premises."

The tenant took possession of the premises sometime in August, 1956. During November, 1956, appellee

notified appellant that the well which furnished water both to appellant and appellee ceased functioning. In December, 1956, appellant lessor replaced the pump, motor and the piping leading down to the well at a cost of $830.00. Upon refusal of appellee to pay this sum, a complaint in assumpsit was instituted in the court below to recover this sum. Testimony was taken, and, after conclusion of appellant's case, the court below entered a compulsory non-suit.

The sole issue raised on this appeal is the interpretation of clause in the lease which provides that "the lessee shall at all times maintain and keep in good repair the motor and other equipment which operates a well for the premises." Appellant urges that this provision in the lease is broad enough to compel the tenant to replace by the installation of new equipment for the well in question, while appellee contends that this clause creates a duty only to repair and not to replace.

The evidence of appellant disclosed that the condition of the pump was so bad, within a period of four months after the tenancy commenced, that the old pump had to be pulled out and a completely new pump installed. The columns which support the water column and the pump itself had been completely eaten away by the acid contained in the water, and the pipes between the top of the well and the tank had to be replaced. While the bearings in the motor were not in complete working condition, the testimony did not disclose whether this had to be replaced. The installing contractor merely testified that "that was Mr. Hampers' aim that we should replace it. . ." When asked directly whether the motor had to be replaced, the contractor stated: "I don't know, it became obsolete with the pump." The testimony also disclosed that the motor was purchased by the contractor as junk and

made an allowance of $25.00 for it. Thus, the evidence disclosed the necessity for replacement rather than for repair.

The phrase "to maintain and keep in good repair" implies the preservation of the status quo, or a restoration approximately to the original condition, natural wear and tear excepted. We do not construe these words in the lease as being synonymous with the term "replace." In *Pennsylvania Railroad Co. v. Pennsylvania-Ohio Electric Co.,* 296 Pa. 34, 45, 145 A. 686, the Supreme Court, in construing the phrase "maintain, repair and renew" stated: "Each word is presumed to have some meaning, and to 'renew' naturally means to make new again, while to repair is to mend... It must have been in contemplation of the parties that in time the bridge, exposed to wear, strain and the elements, would give out and require replacement. In other words, that it must be renewed, and for that the contract provides."

The parties here limited the obligation to maintain and keep in good repair. This did not include replacement. If the parties had so intended, they would have used the word "replace" and any ambiguity as to meaning would have been clear. The lease, having been drawn by the lessor, is construed most strongly against him. The parties, having made their contract, cannot ask the court to make a new one for them to include the obligation to replace.

We have examined the cases relied on by the appellant. In none of the cases cited do we find that the courts have substituted the word "replace" for "repair". Appellant contends however, that the clause in question charged appellee with the duty to keep the well in operation at all times, but we do not so construe the clause. The covenant charged the tenant with the *duty to repair the equipment* and not to keep the well in operation at all times.

There was no conflict of evidence presented. The determination of the meaning of the clause in question was a legal determination which had to be decided by the court. The case, therefore, was properly taken from the consideration of the jury.

The order of the court below is affirmed.