416 A.2d 1075

Laverne BROCKETT, Also Known As and Formerly Known As Laverne Yanosko, Appellant,

v.

Robert E. CARNES and Clara Carnes, His Wife.

Superior Court of Pennsylvania.

Submitted April 10, 1979.

Filed Dec. 19, 1979.

Ronald Backer, Pittsburgh, for appellant.

James S. Silvis, Greensburg, for appellees.

Before CERCONE, President Judge, and WIEAND and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant (lessee) contends that the lower court erred in granting appellees' (lessors') preliminary objections in the nature of a demurrer because a provision in their lease providing that the "[l]essors shall be liable for exterior

maintenance and extraordinary maintenance" required the lessors to rebuild the premises after they had been destroyed by fire.[1] We disagree and, accordingly, affirm the order of the lower court.

Because the lower court sustained the lessors' preliminary objections in the nature of a demurrer to the lessee's complaint, "[f]or purposes of appellate review, we must regard the allegations in [the lessee's] complaint as true and accord them all the inferences reasonably deducible therefrom." *National Building Leasing, Inc. v. Byler*, 252 Pa.Super. 370, 372, 381 A.2d 963, 964 (1977). The lessee's complaint reveals the following: On November 1, 1966, the parties entered into a lease "for all that certain street floor of the premises situated at 1501 Broad Street, South Greensburg, Westmoreland County, Pennsylvania known as the Buckhorn Bar and Grill . . . ." On August 10, 1974, the leased premises were destroyed by fire. The premises had been fully insured by the lessors. A rider accompanying the lease contained a provision stating: "[Lessee] shall be responsible for inside repairs and ordinary maintenance. Lessors shall be liable for exterior maintenance and extraordinary maintenance." The lessee sought damages for the lessors' alleged breach of this provision of the lease by not rebuilding the premises.

The lessors filed preliminary objections in the nature of a demurrer, alleging that the lessors were not obligated to

1. The lessee also contends that the basis of the lessors' preliminary objections in the nature of a demurrer was the defense of impossibility of performance, which should have been pleaded as new matter. Pa.R.C.P. 1030 provides in pertinent part: "All affirmative defenses, including but not limited to . . . impossibility of performance . . . shall be pleaded in a responsive pleading under the heading 'New Matter.'" "Preliminary objections in the nature of a demurrer pursuant to Rule 1017(b)(4), Pa.R.C.P., is [sic] merely an allegation by the defendant that the plaintiff's complaint has failed to state a cause of action upon which relief may be granted." *Satchell v. Insurance Placement Facility of Pennsylvania*, 241 Pa.Super. 287, 292, 361 A.2d 375 (1976). The lessee's contention is without merit because the lessors demurred on the ground that the lease did not obligate them to rebuild the premises, not on the ground that performance of their lease obligations was impossible.

rebuild the damaged premises. The lower court granted the preliminary objections, and this appeal followed.

■ It is well-settled that "[i]n the absence of an express agreement there is no implied obligation on the landlord to repair demised premises . . . ." *Moore v. Weber*, 71 Pa. 429, 432 (1872). "It has always been considered that where, in a lease there is an express and unconditional agreement to repair and keep in repair, the tenant is bound to do so, although the premises be destroyed by fire or other accident . . . ." *Hoy v. Holt*, 91 Pa. 88, 90 (1879). *See also Spires v. Hanover Fire Insurance Co.*, 364 Pa. 52, 55–56, 70 A.2d 828, 830 (1950); *Girard Trust Co. v. Tremblay Motor Co.*, 291 Pa. 507, 518, 140 A. 506, 510 (1928).[2]

In *Morris v. American Liability & Surety Co.*, 322 Pa. 91, 185 A. 201 (1936), our Supreme Court defined the word "maintenance," as used in an insurance policy, as follows:

> The word "maintenance" used in this policy covers all acts which come within its ordinary scope and meaning. To "maintain" means to preserve or keep in an existing state or condition and embraces acts of repair and other acts to prevent a decline, lapse or cessation from that state or condition. [Citations omitted.] In a wide variety of situations the word "maintain" has been taken to be synonymous with "repair." [Citation omitted.] This is the usual meaning, the dictionary meaning, and the mean-

---

**2.** The rule stated in *Hoy* and progeny is the common law rule followed in other jurisdictions. *See* 1 M. Friedman, Friedman on Leases § 9.1, at 311 & n.25 (1974), and authorities cited therein. Although there does not appear to be any reported Pennsylvania case applying the *Hoy* rule where the lease obligated the *lessor* to repair the premises, courts in other jurisdictions have applied the same rule. *See id.* at 313–14 & n.37, and authorities cited therein. Several jurisdictions do not follow the common law rule. *See, e. g., Realty & Rebuilding Co. v. Rea*, 184 Cal. 565, 194 P. 1024 (1920); *Saylor v. Brooks*, 114 Kan. 493, 220 P. 193 (1923); *Nixon v. Gammon*, 191 Ky. 175, 229 S.W. 75 (1921); *Wattles v. South Omaha Ice & Coal Co.*, 50 Neb. 251, 69 N.W. 785 (1897). *See generally* Annot. Landlord's Duty Under Express Covenant to Repair, Rebuild, or Restore, Where Property Is Damaged or Destroyed by Fire, 38 A.L.R.2d 682 (1954); 1 M. Friedman, *supra,* § 9.1.

ing which must control in the absence of a clear expression of a contrary intention. . . .

*Id.*, 322 Pa. at 94–95, 185 A. at 202. *See also* Webster's Third New International Dictionary 1362 (unabridged 1967) (defining "maintenance" as the "labor of keeping something (as buildings or equipment) in a state of repair or efficiency").

In the instant case, the lessee argues that the term "maintenance" includes "repair," and, therefore, under *Hoy, supra,* the lessors had a duty to rebuild the premises. We agree that the word "maintenance" encompasses "repair." However, for the following reasons we do not believe that *Hoy* is dispositive of this case.

Initially, we seriously question whether our Supreme Court would still follow the rule stated in *Hoy* one hundred years ago. Our Supreme Court recently stated: "In reaching a decision involving the landlord-tenant relationship, too often courts have relied on outdated common law property principles and presumptions and have refused to consider the factors necessary for an equitable and just conclusion." *Albert M. Greenfield & Co. v. Kolea,* 475 Pa. 351, 356, 380 A.2d 758, 760 (1977), noted in Comment, *Pennsylvania Supreme Court Review, 1977,* 51 *Temp.L.Q.* 550, 735–46 (1978). That case involved another rule announced in *Hoy,* that in the absence of a lease provision to the contrary, the lessee must continue to pay rent after the leased premises have been accidentally destroyed. Our Supreme Court rejected that rule partly because "[t]he presumption established in . . . *Hoy* . . . no longer has relevance to today's landlord-tenant relationships." *Id.,* 475 Pa. at 357, 380 A.2d at 760.

We need not decide whether the *Hoy* rule—that a party who is obligated by a lease provision to repair the premises must rebuild them if they are accidentally destroyed—is still the law in Pennsylvania. Assuming, *arguendo,* that the *Hoy* rule is still good law, we conclude that it is not controlling in the instant case because the lease herein provides that the

lessors are liable for "maintenance," not "repairs." Although the dictionary definition of "maintenance" encompasses "repairs," it does not necessarily follow that the two words are synonymous when used in a commercial lease. It is arguable that because the *Hoy* rule has been the law in Pennsylvania for a century, parties providing in their lease that one party has the duty to repair the premises believe that it is unnecessary to specify that this duty includes rebuilding the premises if they are destroyed. However, no Pennsylvania court has ever held that a lease obligation to "maintain" the premises includes rebuilding them. Therefore, the parties in the instant case could not have reasonably believed that it was unnecessary to specify in their lease that the lessors were obligated to rebuild the premises should they be destroyed. We refuse to extend the *Hoy* rule to this case. Having concluded that *Hoy* does not control this case, we must determine whether the provision which renders the lessors liable for "exterior maintenance and extraordinary maintenance" required the lessors to rebuild the premises.

In *Hampers v. Darling*, 194 Pa.Super. 59, 166 A.2d 308 (1960), this Court construed a provision in a lease of a storeroom which provided that the lessee "shall at all times maintain and keep in good repair the motor and other equipment which operates a well for the premises." *Id.*, 194 Pa.Super. at 61, 166 A.2d at 309. In rejecting the lessor's contention that the lease provision required the lessee to replace the well, the Court stated: "The phrase 'to maintain and keep in good repair' implies the preservation of the status quo, or a restoration approximately to the original condition, natural wear and tear expected. We do not construe these words in the lease as being synonymous with the term 'replace.'" *Id.*, 194 Pa.Super. at 62, 166 A.2d at 310.

We find the reasoning in *Hampers, supra,* persuasive and conclude that the parties in this case did not intend the

word "maintenance" to encompass rebuilding the premises. We do not believe that the use of the word "extraordinary" preceding "maintenance" changes the result. "Extraordinary" is defined as: "of, relating to, or having the nature of an occurrence (as an accident or casualty) or risk of a kind other than what ordinary experience or prudence would foresee . . . ." Webster's Third New International Dictionary 807 (unabridged 1967). The Supreme Court of Kentucky has defined "extraordinary repairs" as "such repairs as are made necessary by some unusual or unforeseen occurrence which does not destroy the building but merely renders it less suited to the use for which it was intended." *Nixon v. Gammon*, 191 Ky. 175, 180, 229 S.W. 75, 77 (1921). In that case, the Court held that a lease provision providing that the lessor would make "extraordinary repairs" did not require him to rebuild the building after it had been substantially destroyed by fire.

■ If the parties in this case intended that the lessors would be liable to rebuild the premises if they were accidentally destroyed, they could have inserted such a provision in their lease. *See Hampers v. Darling, supra*, 194 Pa.Super. at 62, 166 A.2d at 310 ("The parties here limited the obligation to maintain and keep in good repair. They did not include replacement. If the parties so intended, they would have used the word 'replace' and any ambiguity as to meaning would have been clear."). We hold that the lease did not require the lessors to rebuild the destroyed premises and that the lower court correctly granted the lessors' preliminary objections.[3]

Order affirmed.

3. The lessee argues that the fact that the lessors maintained insurance on the premises is an additional factor showing that the lessors were required to rebuild the premises. This contention is without merit because the existence of insurance coverage is irrelevant in determining the lessors' obligations under the lease. *See Girard Trust Co. v. Tremblay Motor Co., supra* 291 Pa. at 516, 140 A. at 510 ("even where the landlord collects fire insurance, this fact in itself cannot enlarge his obligations under the written contract of lease").