## King & Metzger v. Cassell, et al.

(Decided November 13, 1912.)

### Appeal from Fayette Circuit Court.

Landlord and Tenant—Action by Tenant for Injury to Goods Caused by Falling Wall—Power of Tenant—Tenant Relieved of Obligation to Restore Wall—Provision of Statutes.—In an action by a tenant against his landlord for injuries caused by a falling wall resulting from an excavation by an adjoining owner, Held, that if the excavation was being done improperly, or if the method of shoring up the wall, was insufficient, the tenant in the injured building had every right to judge of the character of the work that the landlord had, and could have done every act of prevention which the landlord could have done, and it is not right that the landlord should be held liable for a failure to do the very thing which the tenant might have done. Likewise, the landlord could not recover upon a counterclaim, since by the provisions of section 2297 Ky. Stats., the tenant is relieved of any obligation to restore the wall, there being no provision in the lease for repair upon such a casualty.

ALLEN & DUNCAN and CHARLES KERR for appellants.

GEORGE S. SHANKLIN and SAMUEL M. WILSON for appellees.

OPINION OF THE COURT BY JUDGE WINN—Affirming.

In the years 1906 and 1907, the appellees were the owners of a brick business house on Main street in Lexington, Kentucky. The front part of the building was three stories high, dropping off in the back to two stories. There was a basement under the three-story part of the building only. The ground floor of this building, extending its entire length, was under written lease at the time to appellants, King & Metzger, jewelers. The second and third floors were reached by a stairway ascending from the street. The second floor was rented by the appellees to a tenant other than King & Metzger, and the third floor to yet another tenant. The basement, which was reached by a stairway descending from the King & Metzger room and by an outside grating, was used by King & Metzger for their coal and their furnace. In the basement as well were the gas meters of the tenants of all three floors. Adjoining this property on the east side was a lot owned by the Third National Bank of Lexington. In the fall of 1906, the bank began to clear away its lot for the erecting of a new building.

When the winter came on the work was suspended. It was resumed in the spring of 1907. Then the bank began to excavate the earth in the rear part of its lot lying alongside that part of the Cassell building under which there was no basement. During the course of this excavation, the east wall of that part of the Cassell building fell. King & Metzger thereupon brought this action against their landlords, seeking to recover damage which they sustained in the injury to their stock of goods and business. Upon trial the court allowed defendants' motion for a peremptory instruction in their favor. Plaintiffs' petition was thereupon dismissed, and they appeal here.

The general relation of the landlord to his tenant with respect to repairs is settled in Kentucky. In Franklin v. Tracy, 117 Ky., 267, the rule is quoted from 18 Am. & Eng. Ency. (2nd Ed.) p. 215, thus: "At the common law, it is a well settled rule that, in the absence of any agreement between the parties, the landlord was under no obligations to his tenant to keep the demised premises in repair. The rule of caveat emptor applies in regard to leases, and the landlord is not even under an implied obligation to remedy defects in the demised premises existing at the time of the demise. It follows, therefore, that, in the absence of any agreement on the part of the landlord to repair, a tenant cannot recover from the landlord the cost of the repairs made by him; nor can the tenant recover from the landlord for the injuries to his person or property, or the property or person of his family, caused by the defective condition of the the demised premises." Counsel for appellants expressly admit that appellees were not under obligation to make repairs or keep the leased premises, the store room, in repair. They concede, too, that the wall in question was safe and would have remained so but for the excavation on the bank lot. Then they propound the question as to whether a landlord who rents different portions of his building to different tenants is bound to keep the foundations of his building in reasonably safe condition. The answer to this question practically disposes of the case.

The authorities are not in accord that it is the duty of the landlord, leasing to different tenants, to keep in repair such parts of the building as are for the common use of all the tenants. Upon the broad statement of the proposition, Kentucky is upon the affirmative side.

Chief Justice Hobson, writing, said for the court in Hess v. Hinkson's Admr., 96 S. W., 436: "Where the landlord retains control of part of the premises as where he rents flats or offices, he must use reasonable care to keep the parts of the premises in repair which are for the common use of all the tenants." We also recognized the principle in Mills' Admr. v. Cavanaugh, 94 S. W., 651. The particular part of the building reserved for common use in the Hess case was a water-closet. In the Mills case it was a cistern. In the cases generally, and in the text-books, the portions of the building in common use to which the rule applies are stairways, entrances, hall-ways, and the like, to which the tenants generally have access and through and over which they have easements incident to the several different portions of the building leased to the several tenants. The landlord is in posses-sion of these commonly used portions of his building. He has not parted with dominion over them. He has right of access to them at all times, and the right to exclude the loitering public generally from them. In the case at bar no such place of common easement is involved. The appellants had rented the ground floor. They allege that they used the basement of the building, though it was not mentioned in their lease. Further back, where the wall fell, there was no basement. Yet, because the ground floor was occupied by one tenant, the appellants, and the second story by another, it is urged that the wall, an integral part of both floors, was impliedly reserved by the landlord for the common use of all the tenants, and that he was under a resulting obligation to keep it in safe and usable condition. Somewhat the same question was made in the case of Miles v. Tracy, et al, 89 S. W., 1128. There the plaintiff was the tenant of an upper story. The wall fell. She sued her landlord for her damage, alleging that he had let the lower floor to another, and had reserved and retained control and possession of the walls and foundations of the building. The effort of her pleading was to bring the case within the rule recognized in the Hess case, supra. In denying her relief upon this somewhat factitious position we said:

"This case falls short of the doctrine relied on. Al-though it is stated that the landlord retained possession and control of the walls and foundation, the pleading shows the fact to be that the possession of the entire premises had been parted with. While, if the landlord

had reserved, for example, a stairway for the common use of all of his tenants, it could not be said that any of them had exclusive control of it, or that all together had. It was then his duty to keep it in repair, not by reason of any implied covenant to that effect, but, as those using it were his licensees, he owed them the duty to keep the passway in reasonably safe and fit condition for their use. But here there could have been in fact no reservation of possession or control. The technical averment is an ideality, and inconsistent with the essential conditions resulting from the facts alleged in the petition."

That case cannot be distinguished from the one at bar. It relieves appellees of any liability based upon their supposed obligation to maintain the wall.

Appellants next urge' that, entirely apart from the relation of landlord and tenant, the owner of property owes a general duty to the public to keep his property safe, and is under liability for injury for his failure to do so, that fundamental obligation of ownership which finds expression in the maxim *sic utere tuo ut alienum non laedas;* and that they, the tenants, are entitled to the protection of this rule, just as, to illustrate, would a stranger upon the street who might be injured from a falling cornice. As we will presently discover, the owners of the building did nothing affirmatively which brought on the injury complained of. They made no repairs, they made no use of any part of the premises, they caused no change in the condition of the building. It is to such cases that the maxim applies. One has no right, for instance, so to construct his building as to drain the water from it upon or otherwise injure his neighbor's property. He is bound to protect his neighbor against injury caused by his own structures or resulting from his use of his own property; but there is no principle upon which he can be held bound to erect any structure for the purpose of protecting his neighbor, or to replace any structure upon his own premises which has been destroyed because while it existed it afforded such protection. Had the owners here undertaken this work of shoring up the wall, then they would have been using the wall, they would have been making a use of the property which, if done improperly or injuriously to another, would have made the owner liable. But that case is not here.

It is then urged that the landlords are liable as volunteers in that it is said that they undertook the care of the wall, and that having undertaken it, they are held to a sound execution of what they have undertaken. The facts are not with the appellants. When the work began, in the fall of 1906, the owners of the building caused, at their own expense, braces to be put in between the front three-story part of the building across the bank lot and against the building on the east side of that lot. When the bank began to excavate, in 1907, along the two-story part of the appellees' building, they did nothing. It is true that they stood by and saw the excavation being done. There is no evidence that they did more. As above indicated, they were under obligation to say and do no more. If they saw fit to take the chances of the collapse of their wall, they were strictly within their own rights in remaining inactive.

A good deal is made in the record of a supposed promise by the landlords to make the wall safe. We do not find evidence in the record to support such an undertaking; but if there were such a promise established, without any performance under it, the promise would have no binding effect as against the landlords. A mere promise of a landlord to repair premises already under lease is a promise without consideration upon which no rights will arise in favor of the promisee. Proctor v. Keith, 12 B. Mon., 252; Eblin v. Mills' Exor., 78 Ky., 371. In the case of Gregor v. Cady, 82 Me., 131, relied upon by the appellants, the distinction is sharply drawn between a total omission to do an act which one gratuitously promises to do and a culpably negligent performance of the act when once he has entered upon doing it. Even though it be conceded, therefore, that the landlords promised to make the wall safe, without any additional consideration to them to support their performance, no liability attached to them for their failure to act. They did not act; and it cannot, therefore, be said that they acted negligently.

In conclusion it is well to point out that this wall fell, not because of any act of the landlords, but because of the excavation done on the adjoining lot. If that excavation was being done improperly, or if the method of shoring up the wall was insufficient, the tenants in the building, the appellants, had every right to judge of the character of the work and every facility for anticipating

its probable results that their landlords had. Since the premises occupied by them were under lease to them, they could have done every act of prevention, by process of the court if need be, which their landlords could have done; and it is not right that their landlords should be held liable for a failure to do the very thing which they themselves might have done. We express no opinion upon the character of the work done by the bank. That question is not before us.

The appellees, the landlords below, sought to recover upon a counterclaim against the tenants, predicated upon a supposed obligation of the tenants to keep up the wall. The only covenant in the lease is that the tenants, upon vacating, should make good for all broken glass, locks, keys, bath tubs, closets, water connections, and the like. It contains the general undertaking that the tenants should, at the expiration of the lease, return the premises in as good condition as when received, ordinary wear and accidents by fire, the elements, and other unavoidable accidents excepted. Section 2297, Kentucky Statutes, provides in part as follows: "Unless the contrary be expressly provided for in the writing no agreement of a lessee that he will repair or leave the premises in repair shall have the effect of binding him to erect similar buildings if, without his fault or neglect, the same may be destroyed by fire or other casualty." This section of the statutes suffices to relieve the tenants of any obligation to restore this wall since there was no distinct provision in the lease for repair upon such a casualty. The rule applies as well to a partial as to a total destruction of the building. Sun Insurance Office v. Varble, Receiver, 103 Ky., 758; see also Thomas, et al. v. Conrad, 114 Ky., 841.

The judgment of the trial court is affirmed upon the original and cross appeals.