## Helm v. Leader, et al.

(Decided December 17, 1926.)

### Appeal from Warren Circuit Court.

1. Landlord and Tenant—Lessee, when Sued for Rent, Cannot Counterclaim for Electric Light Furnished Office Used by Another.— In action by lessor of building for rent, lessee, on counterclaim,

could not recover claim for electric light furnished office used by some one else.

2. Landlord and Tenant—Lessee of Building, Sued for Rent, Could Recover Rent for Office Used by Lessor.—In action by lessor for rent, lessee could recover, on counterclaim, rental value of office used by lessor.

3. Landlord and Tenant—Under Lease Providing that Lessee Should Pay for All Repairs and Alterations on Inside, Lessor was Not Liable for Repairing and Installing Plumbing.—Under lease providing that lessee was to pay for all repairs or alterations made on the inside, with exceptions of dining room, kitchen, and office, lessee could not recover cost of installing and repairing plumbing in other parts of building.

4. Landlord and Tenant—Where Landlord had Not Agreed to Make Certain Repairs, Tenant Could Not Recover Cost Thereof and Damages.—Where hotel lease did not provide that landlord was to clean and repair septic tank, tenant could not recover cost of repairs, and damages for waste from septic tank backing up in rooms, from landlord.

5. Landlord and Tenant—Lessee Could Recover Value of Furniture Installed by Him at Expiration of Lease.—Where lease provided that lessee was to return equivalent of articles listed on invoice, lessee could recover value of furniture furnished by him at expiration of lease.

6. Landlord and Tenant—Under Lease Providing that Landlord was to Repair Roof, Lessee Could Recover Damages for His Failure to do so.—Where lease of hotel provided that lessor should keep outside of building, including roof, in repair, lessee could recover damages for lessor's failure to repair roof by counterclaim in lessor's action for rent.

RODES & HARLIN, W. B. GAINES, and J. P. CUSICK, Warning Order Attorney, for appellant.

THOMAS, THOMAS & LOGAN for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

This is the second appeal of this case. The opinion on the former appeal will be found in 207 Ky. 69, 268 S. W. 841. The former hearing left three questions open for determination: (a) The balance due on the rent for the hotel. This the trial court found to be $4,925.00, and of that finding no one is complaining. (b) Whether or not the conveyance of the Ennis lease to M. A. Rosansky was a *bona fide* transaction. The trial court found that it was, and there is no complaint of that. (c) The amount due Leader upon his counterclaim. The trial court al-

lowed him $1,275.00. Of that both plaintiff and defendant are complaining. The plaintiff insists that the court should have allowed nothing, and the defendant, by cross-appeal, is asking for the whole of this counterclaim. That is the only question we have before us. By this counterclaim defendant Leader sought to be paid for the following:

"I.     Electric light furnished office of Big
        Dipper Oil Co. at the rate of $9.00 per mo. $108.00
II.     Rent of an office by Dr. Helm
        at $50.00 per mo. _____   600.00
III.    Cleaning the septic tank_____   100.00
IV.     Furnishing pipe to carry waste from
        the septic tank and to keep it from flowing
        over the property of an adjoining pro-
        prietor _____    50.00
V.      Waste from septic tank backing up in
        rooms Nos. 34 and 35 _____   250.00
VI.     Dr. Helm's forcible entry in Oct., 1921,
        into certain unnumbered rooms of the
        hotel _____ 1,000.00
VII.    Putting in new plumbing and repair-
        ing old _____ 1,500.00
VIII.   Equipment and furniture alleged to
        have been placed in the hotel by Bernstein
        and converted by Helm _____ 1,750.00
IX.     Roof leaking so as to deprive Leader
        of the use of the hotel, _____ 3,000.00
                                                        _____
                                                        $8,358.00"

If Leader furnished light as claimed in his item "I" there is no reason that Dr. Helm should pay for it. He should ask the parties who used this office to pay for that. This claim was properly disallowed.

The court refused to allow anything on item "II." The proof of the worth of the use of this office is by no means clear, but accepting Dr. Helm's figure of $15.00 per month, we can see no good reason that Leader should not be allowed $180.00 on this item. Leader's claim for items III, IV, V and VII was properly rejected. This lease contained the following:

"Helm shall keep the outside of the building in repair, that is the roof, guttering and walls, and said

Krouskoff is to pay for all repairs or alterations made on the inside, except such as are made and required in the dining room, kitchen and said office.''

There is nothing to show that any of these repairs were made in the dining room, kitchen or office, and by the terms of the lease copied, the lessee was to make the improvements called for in item VII. There is nothing in the lease to show who was to pay for the work claimed for under items III, IV and V.

''In the absence of any agreement on the part of the landlord to repair, a tenant cannot recover from the landlord the cost of the repairs made by him.''

King & Metzger v. Cassell, 150 Ky. 537, 150 S. W. 682, 42 L. R. A. (N. S.) 774; Nixon v. Gammon, 191 Ky. 181, 229 S. W. 75; Thomas v. Conrad, 114 Ky. 841, 24 Ky. L. R. 1630, 25 Ky. L. R. 169, 71 S. W. 903, 74 S. W. 1084. Item VI was properly rejected for want of proof.

The claim made under item VIII is governed by this clause of the contract: ''An invoice of the contents of these buildings was this day taken, and it is understood that the said Krouskoff and Leader is to return, when this lease expires, an equivalent of said list of articles, or an equivalent in value to said Helm.'' At the termination of this tenancy, Dr. Helm refused to allow any of the furniture in this hotel to be moved. Bernstein testified that there was expended $1,700.00 for spreads, sheets, blankets, cots, dressers, basins, pitchers, chairs, etc. He is supported in this by Leader, who says that $1,500.00 was expended for such items, as named above and $275.00 was paid to Dr. Helm for furniture, known as the McGinnis furniture. At the time these men testified, Dr. Helm's testimony had already been given, and in that testimony he had said that he had an inventory of what was in the hotel when he rented it to Leader, and an inventory of what was in it at the termination of the lease; but with these inventories in his possession, he did not undertake by cross-examination of these witnesses, to show they were not telling the truth about the matters, and that such additions had not been made. Dr. Helm gave his deposition in rebuttal and did not in that deposition dispute this claim. He promised in his testimony to file these inventories with the commissioner, but they are not in the record. It is suggested in the brief for Dr.

Helm that this money was paid out by Bernstein and that if such furniture was put into this hotel, it belongs to Bernstein; but it has been Dr. Helm's contention all along that Bernstein was the representative of Leader, handling Leader's money and running this hotel for Leader, and we have held that Dr. Helm was right in his contention, and he will have to take the bitter with the sweet. He got this furniture. The only evidence in the record of its value is that when bought it was worth about $1,750.00. We cannot see why he should not pay for it, and the $275.00 allowed by the trial court was too little. We are by no means satisfied that $1,750.00 should be allowed. By the provisions of the contract there was to be returned to Dr. Helm as much furniture in value as he let these parties have. Buying $1,750.00 worth does not mean that at the end of the lease the furniture will be worth that much more. Leader should have shown how much, if any, the value of this furniture was increased. It was not a question of what he bought, but of what he left there when the lease was out. The evidence upon item IX is very unsatisfactory. Bernstein places his estimate at $3,000.00 and Leader places it at $2,500.00. Neither of them undertakes to say how many rooms were rendered untenantable by this leaking room or how long they remained so, but say that guests left the hotel and went to other hotels. Some of the help about the hotel testified and their testimony is to the effect that little interruption in the use of the hotel resulted from the leaks. By the provisions of the contract which we have copied above, it was Dr. Helm's duty to fix this roof. He does not deny that it leaked, but blandly states in his testimony, "It only leaked when it was raining." Bernstein, in his testimony, said he called Dr. Helm's attention to the leaks and that Dr. Helm said, "Yes, sir, that is my job; but I don't want to pay out any expenses as I want to sell the hotel." The trial court allowed $1,000.00 on this item, which, we are sure, was too much, just as we are sure the allowance on item VIII was too little. This item should be reduced, item VIII should be increased, and $180.00 should be allowed on item II. The chancellor allowed Leader $1,275.00 in all, and we are persuaded this was about right, and the judgment is affirmed upon both the original and the cross appeal.