## Howard et al. v. Newton et al.

March 26, 1943.

Woods & Woods and A. T. Bryson for appellants.

Davis M. Howerton, Ray Holbrook and Clyde L. Miller for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appeal questions an order of court overruling motions of the appellant, Thomas Howard, Sr., to set aside a judgment against him for rent and denying a set-off for repairs, and to re-refer the case to the Master Commissioner and permit him to plead and offer further evidence in support of his claims. The appellant also submits that the judgment on the record which had been made is erroneous.

William Naughton died intestate on January 19, 1935. He individually owned property on the corner of Greenup and Fourteenth Street in Ashland, and he and his wife jointly owned a vacant lot at the rear of it and other property on Carter Avenue. In August, his widow, Mrs. Bridget Naughton, filed suit against his unknown heirs in which she alleged her husband had left no heirs at law except herself, and that as such she was entitled to all of his property, and prayed that the court convey the same to her or order it sold and award her the net proceeds. A warning order was duly made and the warning order attorney eventually reported his unavailing efforts to locate heirs of the deceased. Mrs. Naughton died in October, 1935, and the case was revived in the name of Thomas Howard, Sr., as her executor. He was her nephew. After the death of her husband, Mrs. Naughton executed a will in which she devised all her right and title in the corner property to Howard and his wife. The devise was recognized to be ineffectual.

Early in 1937 Mrs. Kathleen Newton came to Ashland to visit her brother, William Naughton, and learned that he had died two years before. She came into the suit and alleged there had been another brother, John Naughton, who had not been heard from for many years. She pleaded that he should be declared presumptively dead. In the course of time this brother was located in Missouri and he appeared in the case and claimed his inheritance. Intermediate proceedings, including a sale of the property, had been taken upon the hypothesis that she was the only heir. These were set aside. An order of reference to the Master Commissioner to receive and report on claims was entered in June, 1938. In July, 1938, a local undertaker brought suit to settle the estates of William Naughton and Mrs. Bridget Naughton. The cases were consolidated.

It does not appear that Howard ever filed a claim or pleading in relation thereto until he testified before

the Commissioner in April, 1939.  It was shown that Howard moved into the corner storeroom on August 2, 1934, during William Naughton's lifetime, and ran a saloon in it.  After his death and until her own death, the widow had charge of the building, excepting the room occupied by Howard.  After her death Howard, as administrator of William Naughton's estate, and as executor of Mrs. Naughton's will, had charge of all the property until February 14, 1938.

It appears that the Naughtons had lived in an apartment on the second floor of the corner property, and other portions of the building could not be rented.  It is in a poor rental district and has been in bad repair at all times.  Howard testified that he occupied the storeroom under an agreement with Naughton to pay $40 a month. He had paid that sum to Mrs. Naughton until her death and thereafter charged himself with the same rental and with the rents he collected from other property.  He further testified that he had made necessary repairs on the property, such as to restore falling plastering, repair the leaking roof and broken plumbing.  After the building was flooded in 1937, there was much of this to be done. He also had made some repairs on the Carter Avenue property.  His testimony was indefinite although he filed a statement purporting to give the receipts, charges and disbursements.  He made no reference to the statement or any item on it.  This statement also claimed credit for expenditures made for food, nursing and other care of Mrs. Naughton, and some items incident to her burial. The recapitulation showed only $16.06 excess of receipts over disbursements.  There was no supporting proof either by verification of the claims against the estates of the decedents or by evidence.  Howard made no claim of authority from any owner to spend money for repairs of the buildings.  He justified it upon the ground of necessity.

The Master Commissioner disregarded his testimony as to a contract of rental.  But he reported that in any event, in the absence of proof of a legal contract as to time, such an agreement terminated with Naughton's death.  Upon evidence as to the reasonable rental value of the storeroom occupied by Howard, the Commissioner charged him at the rate of $65 a month.  After making supplementary reports correcting apparent clerical misprisions, the Commissioner reported such charge

for 27 months, dating from the death of Mrs. Naughton until Howard vacated the property, the total being $1,755. Charges for rents collected from other property amounted to $630. The Commissioner reported that Howard would have been allowed credit for expenditures made for repairs on property he did not occupy as a tenant and as administrator and executor of the two estates, but that he had not proved them. Further time had been given him, as his attorney had been notified, but he had not availed himself of the opportunity. This report was filed December 8, 1939. On January 26, 1940, Howard filed exceptions to the report and a motion to re-refer the case to the Master Commissioner for taking further proof. The affidavit of his counsel was filed in support of the motion. The only specific proof it was therein represented could be obtained was to establish a contract with William Naughton that the rent of the property should be $40 a month. On April 16, 1940, the court overruled Howard's exceptions to the Commissioner's report and rendered judgment against him for the sum of $2,535, with interest, for the corner property, and $315 for other property. The motion to re-refer the case was not passed upon. On May 1, 1940, Howard moved the court to set aside that judgment, and give him additional time in which to file further affidavits. It was after this that the Master Commissioner corrected his original report that Howard should be charged with $1,755 instead of $2,535. The case remained on the docket, with some orders in respect to distribution and other matters which did not affect Howard's claims.

Other counsel came into the case for Howard, and in April, 1941, he filed a motion for an order re-referring the cause to the Master Commissioner so that he might introduce further evidence in support of his claim that he had a contract with the decedent, William Naughton, renting the property at $40 a month, and after his death a like contract with his widow, and that he might prove his claim for repairs on that building and the amounts he had paid as administrator of William Naughton's estate and executor of Bridget Naughton's will. He also moved to file answer and reply to the pleadings of Mrs. Kathleen Newton. He also moved that the court rule upon the motions made in January, 1940, and May, 1940. The affidavits filed in support of the motion to re-refer the case were, in substance, that he could prove by his wife that he had the contract referred to and had made

the necessary repairs upon the property. He had not offered her as a witness because she was disqualified until the amendment to Sec. 606, Civil Code of Practice, in 1940, Acts 1940, c. 95. He also offered to file an "Amended Final Settlement" of the two estates, to which were attached receipts for rent paid Mrs. Naughton and for material, etc., for repairs. This was verified by Howard and his wife. The court overruled the several motions but amended the judgment which had been rendered against Howard in April, 1940, reducing the same from $2,535, to $1,755, in accordance with the corrections made in the Master Commissioner's report. It is from this order the appeal is primarily taken.

Accepting the appellant's argument, without deciding the point, that the door had not been closed against him by any final judgment by reason of the suspension of the judgment on the Commissioner's report by the pendency of his motions made in January, 1940, and because the court has power to set aside any order as interlocutory until final disposition of a suit to settle an estate, we do not think the court abused a discretion or committed prejudicial error in refusing to. reopen the case on those issues.

The appellant had not originally, or by the affidavits tendered in support of his motion to re-refer the case for further proof, claimed his contracts of rental at $40 a month were for any definite period. Those contracts, if made, were terminated by the death of the respective parties and Howard remained as a tenant by sufferance of the owners, Naughton's heirs. Baker v. Oliver, 219 Ky. 537, 293 S. W. 1070; Terry v. Henry, 274 Ky. 778, 120 S. W. (2d) 404. We think it was proper to charge him with reasonable rent, and that which was charged was fully sustained by the evidence. The court had not charged Howard with anything for the use and occupancy of the room before the death of the widow; hence, there was no reason whatever for reopening this branch of the case.

As to his claimed credits for repairs, the appellant testified that he had made deductions from the rents paid Mrs. Naughton during her lifetime. He did not claim that he could have proved by his wife or anyone upon a reopening that there was any contract with the heirs who owned the building that he should make the repairs or be entitled to reimbursement of their cost. The amount

claimed to have been spent after Mrs. Naughton's death was $422. Howard's expenditures on the jointly owned lot and Carter Avenue property amounted to $81.87, only one-half of which was chargeable against William Naughton's estate. Other expenditures were made for Mrs. Naughton personally or for her monument and were, of course, chargeable to her estate. The total of these claims, with administrator's commissions, amounted to $295.80. A tenant who expends money for repairs on property occupied by himself cannot charge the cost to his landlord or recover money spent for that purpose in the absence of an express contract to that effect. Helm v. Leader, 217 Ky. 379, 289 S. W. 278; Sevier v. Bonta, 217 Ky. 835, 290 S. W. 683. Therefore, the court could have rendered no other proper judgment than that which had been rendered had he opened up the case, except possibly to allow credit for expenditures made for repairs on the Carter Avenue property and for Mrs. Naughton and her estate. As to those items, Howard had been given ample opportunity to produce his proof during the five years and more he was a party to this case. As we have stated, he had testified before the Commissioner and had been expressly given further opportunity to produce his proof and failed to do so. In our opinion there was no valid reason assigned in April, 1941, for opening up the case and giving him a second day in court at that late date and after so much laches.

Another motion was made at the time by Howard and his wife that they be paid one-half of the proceeds of the sale of the jointly owned vacant lot to which they were entitled, as they alleged, under Mrs. Naughton's will. The lot had been sold for $1,105 upon the ground that her personal estate was not sufficient to pay her debts. It appears that that allegation was true and that all of her estate was consumed by debts and funeral expenses. Mrs. Naughton's will made several specific bequests and gave Howard and his wife only the residuary. There was none. Moreover, there had been many orders of distribution along the way and it does not appear that the appellant ever took exception to the disallowance of his claims or right as devisee.

The appellee has moved for a cross appeal from the judgment because it charged the appellant with rent only from the date of Mrs. Naughton's death, October 31, 1935. She claims that he should have been charged

with rent from William Naughton's death in February, 1935. After making allowance for the widow's one-third of the rent, the balance is $390. The Master Commissioner based his report upon the fact that the widow had assumed control of the property. This with other circumstances recited in the report we think were sufficient to authorize the judgment as rendered.

The judgment is affirmed on both the direct and cross appeals.