The **HOME INSURANCE COMPANY,**
Plaintiff-Appellant,

v.

**Joel M. HAMILTON,** Defendant-Appellee.

**No. 17733.**

United States Court of Appeals
Sixth Circuit.

May 20, 1968.

James S. Welch, Louisville, Ky., for appellant, Wesley P. Adams, Jr., Ogden, Robertson & Marshall, Louisville, Ky., Nelson D. Rodes, Jr., Lively & Rodes, Danville, Ky., on the brief.

John M. Coy, Richmond, Ky., for appellee, James S. Chenault, Charles R. Coy, Coy & Coy, Richmond, Ky., on the brief.

Before WEICK, Chief Judge, McCREE, Circuit Judge, and McALLISTER, Senior Circuit Judge.

WEICK, Chief Judge.

The Plaintiff, The Home Insurance Company, filed suit in the District Court against defendant, Joel M. Hamilton, the lessee of a gasoline filling station property, to recover by way of subrogation the amount which it paid its

insured, E. P. Woods, the owner-lessor of the property, for the loss he sustained on account of the destruction of his filling station building and equipment by an explosion and fire due to the negligence of employees of defendant, Joel M. Hamilton.

The District Judge granted a partial summary judgment in favor of the insurance company, on the issues of negligence and proximate cause, but held that the issue as to whether the employees of defendant, Joel M. Hamilton, were acting in his behalf or in behalf of the owner-lessor, E. P. Woods, at the time of the fire, was not resolved by the record, and therefore he overruled the motion for summary judgment on the issue of agency. D.C., 253 F.Supp. 752.

The case was tried before a jury solely on the issue of whether Hamilton's manager Stipes was acting for his employer or for the lessor Woods at the time of the fire. At the close of all of the evidence, plaintiff's motion for a directed verdict was denied. The court submitted a single interrogatory to the jury requiring a special finding on this issue. The jury, in answer to the interrogatory, found that Stipes was acting for the lessor Woods, and the Court then dismissed the complaint and later denied a motion for judgment notwithstanding the verdict.

We hold that there is no evidence in the record to support the finding of the jury that Stipes was acting for Woods at the time of the fire, and that it was error to submit the issue to the jury.

Woods, the insured owner of the filling station property, leased it for a period of one year to Hamilton, by written lease a copy of which is appended to this opinion. Hamilton operated the filling station through his manager Stipes, who was paid a salary of fifty dollars per week and fifty per cent of the profits. Hamilton, in his testimony, referred to their arrangement as a partnership. In any event, Stipes had full authority to operate the filling station, which was open for business twenty-four hours a day, to hire and discharge employees, and to purchase and pay for supplies. Hamilton's wife kept the books and wrote checks in payment of bills. She was at the station frequently. Stipes hired three employees.

On two or three occasions before the fire, the "boys" at the filling station asked Woods for his consent to remove some asphalt tile from the cement floor in a small area of the building. Water had seeped from the toilet and penetrated underneath the tile and an odor was emanating therefrom. Woods told them that he preferred to leave the tile here.

On the day of the fire, manager Stipes again contacted Woods by telephone to ask his consent to remove the tile, and told him it would not cost him anything. Stipes said: "It would make it nicer." Woods told him: "If it would make you guys happier, take if off."

Stipes and the other employees proceeded to remove the tile. In order to loosen the tar adhesive, they applied gasoline. An explosion and fire resulted, which destroyed the building and equipment. Hamilton disclaimed all knowledge that the tile was being removed by his manager and other employees. It was stipulated that the insurance company paid the owner-lessor for the loss in the entire amount of fifteen thousand dollars.

 In the absence of an agreement, there was no obligation on the part of the landlord to keep the demised premises in repair or to make any changes or alterations. King & Metzger v. Cassell, 150 Ky. 537, 150 S.W. 682, 42 L.R.A.,N.S., 774 (1912). The law imposes a duty on the tenant to take ordinary care of the premises. Campbell v. W. M. Ritter Lumber Co., 140 Ky. 312, 131 S.W. 20 (1910).

 In the present case, the lease specifically imposed an obligation on the part of the tenant to keep the premises, the buildings and equipment, in good condition and repair. It further provided that no changes or alterations could be made without the written con-

**110**

sent of the lessor. Evidently, because he may have believed that consent was necessary, manager Stipes asked the lessor for permission to remove the tile. All the lessor did in this case was to give his consent. The lessor, by merely giving his consent, did not constitute the lessee's manager and all of the lessee's other employees as agents of lessor to make the repairs. The lease expressly provided:

"* * * [N]either the Lessee nor any other persons employed by him shall be deemed or considered employees or agents of the Lessor."

The premises were in the exclusive possession and control of the lessee at the time of the explosion and fire and the manager and other employees of lessee were under his control. In removing the tile, they were not doing anything that they had been requested to do by the lessor.

■■ It was not competent to vary or change the written lease by parol evidence, although appellee attempted to do so. The fact that the owner-lessor had on occasion made some repairs on the pumps and had donated paint to lessee did not change or modify the lease.

The lease further provided:

"Upon termination of this lease, Lessee shall deliver immediate possession of said premises, equipment and fixtures in the same good condition as when received, ordinary wear and tear and unavoidable damage by fire or elements excepted."

This contractual obligation was in conformity with the common law of Kentucky. Campbell v. W. M. Ritter Lumber Co., supra.

The fire was not unavoidable, but was caused by the negligence of the lessee's employees, as the District Court found. 253 F.Supp. 752. In our opinion, they were acting for their employer, the lessee, at the time of the fire.

The judgment of the District Court is reversed and the cause is remanded for entry of judgment against the appellee in the amount of fifteen thousand dollars.

APPENDIX
E. P. WOODS
SERVICE STATION LEASE AGREEMENT
[GULF]

THIS LEASE made this 1st day of January, 1960 between E. P. WOODS, with its principal business office at Danville, Kentucky, hereinafter called "Lessor," and Jewel Hamilton, of Frankfort, Ky., hereinafter called "Lessee," WITNESSETH:

The Lessor does hereby demise and lease to the Lessee the premises located in the City of RFD Nicholasville, County of Garrard and State of Kentucky, more particularly described as follows:

Service Station on U.S. 27 Highway, located at Camp Nelson Ky.; Known as Riverview Gulf Service Station. together with all improvements, equipment and fixtures located thereon.

To have and to hold the said property for the term beginning on the 1st day of January, 1960, and terminating on the 31st day of December, 1960. It is understood and agreed that any holding over by Lessee at the end of this lease or at the end of any renewal or extension period without having first renewed or extended this lease in writing, shall not be considered as a renewal or extension of this lease for any period longer than one month. Notice to the Lessor shall be addressed to Danville, Ky., and notice to the Lessee shall be addressed to Frankfort, Ky.

The Lessee covenants and agrees to pay monthly the sum of $250.00 in advance, to the Lessor as rental for said premises during the term of this lease, the first installment of $250.00 to be due and payable on the 1st day of January, 1960 and the sum of $250.00 thereafter on the 1st day of each succeeding month throughout the term of this lease. However Mr. Jewel Hamilton has the right to cancel this lease any time on 10 days notice.

The Lessee covenants and agrees as follows:

Lessee has examined and is familiar with the condition of the premises, buildings, equipment and fixtures located thereon, and that same are received by Lessee in good order and condition without warranty by Lessor as to condition or repair thereof.

Lessee will not permit said premises to be used for any illegal or immoral purpose, or permit waste or nuisance thereon.

That said premises shall be used for the storage and sale of petroleum products and such other articles as are customarily sold at gasoline service stations.

The Lessee will not paint or repaint the buildings or any of the structures, equipment or fixtures located thereon, make no alterations, additions, or changes thereon or thereto, without first obtaining written consent of the Lessor.

Lessee will not assign, mortgage or encumber this lease or the interest herein granted, or permit same to be encumbered; nor sublet the premises or buildings.

The Lessee shall pay all gas and electric charges, water rents, all license fees, taxes and other charges accruing in connection with the use of said premises.

The Lessee shall keep said premises, buildings, equipment, fixtures, sidewalks, approaches and driveways in good condition and repair; keep said premises, buildings, rest rooms, sidewalks, approaches and driveways clean, safe, and in a sanitary condition, and comply with all laws, ordinances, rules or regulations of constituted public authority applicable thereto.

Upon Lessee's default or failure to perform any of the convenants of this lease, Lessor may forthwith declare this lease at an end, and immediately re-enter and repossess said premises, equipment and fixtures.

Upon termination of this lease, Lessee shall deliver immediate possession of said premises, equipment and fixtures in the same good condition as when received, ordinary wear and tear and unavoidable damage by fire or elements excepted.

In addition to the right to immediately re-enter and repossess the said premises, the Lessor shall be entitled to all the remedies incident to the relation of landlord and tenant, and the Lessee hereby empowers any attorney of any court of record to appear for him and confess judgment in ejectment with right of immediate writ of possession. The right of the Lessor to insist upon strict performance of the terms of this contract shall not be affected by any waiver, forbearance, or previous course of dealing.

Lessee agrees to exonerate, save harmless, protect and indemnify the Lessor from and against any and all losses, damages, claims, suits or actions, judgments and cost which may arise or grow out of any injury to or death of persons or damage to property in any manner connected with the use and possession of said premises, equipment and fixtures by the Lessee, or the use, maintenance and operation of any business conducted by the Lessee on said premises.

None of the provisions of this lease shall be constructed as reserving to the Lessor any right to exercise control over the service station business and operations of the Lessee conducted upon the leased premises, or to direct in any manner how the Lessee shall conduct his business. It is understood and agreed that the entire control and direction of said activities shall be and remain in the Lessee, and neither the Lessee nor any other persons employed by him shall be deemed or considered employees or agents of the Lessor.

It is further understood and agreed that if the Lessor is not the owner of the premises herein demised, then the within lease and the estate created here-

by are subject to all the terms, provisions and conditions of the lease or other arrangements under which the Lessor occupies said premises, and if for any reason whatever, either with or without the consent of the Lessor, Lessor's tenancy is cancelled, surrendered or terminated, then the within lease shall automatically be terminated as of such date, without any liability on the part of either party to the other.

This Lease Agreement contains the entire contract and agreement between the parties.

E. P. WOODS
By (s) E. P. Woods
(s) Joel Hamilton

Witness: